IN THE MATTER OF APPEAL OF PILOT FREIGHT CARRIERS, INC. TO THE STATE BOARD OF ASSESSMENT FROM THE 1962 AD VALOREM VALUATION PLACED BY MECKLENBURG COUNTY ON PERSONAL PROPERTY OF THE SAID PILOT FREIGHT CARRIERS, INC.

(Filed 15 January, 1965.)

**1. Taxation § 23—**

A county board of equalization and review and the State Board of As-

as the Legislature confers.

**2. Same—**

A county board of equalization and review has authority to pass upon the tax situs of personal property as well as jurisdiction to list values and assess property. G.S. 105-327(g).

**3. Same—**

The State Board of Assessment has jurisdiction to determine the tax situs of personal property upon appeal from the determination of that question by a county board of equalization and review, G.S. 105-275, or the taxpayer may follow the procedure prescribed by G.S. 105-406 if he prefers.

**4. Taxation § 24—**

The residence of a corporation is the place of its principal office in the State, and the situs of its personal property for taxation is the county of its residence, G.S. 105-302(a), except for personal property owned by it which is situated in another county within the meaning of G.S. 105-302(d).

**5. Same—**

An interstate carrier having its principal office in a county of this State maintained "break-bulk" terminals in other counties and listed for taxation

in such other counties only such equipment as was permanently stationed at such terminals, but listed its "line-haul" equipment only in the county of its residence. *Held:* The county of its residence is the situs of its "line-haul" equipment for the purpose of taxation, since the "line-haul" equipment has no situs in the counties of the "break-bulk" terminals. The fact that, for the purpose of internal control, the carrier assigned certain of its tractors to the "break-bulk" terminals does not alter this result.

**6. Same—**

Situs of property for taxation within the meaning of G.S. 105-302(d) means more than mere temporary presence and connotes a more or less permanent location.

APPEAL by Mecklenburg County from *Copeland, S. J.,* April 13, 1964 Schedule "D" Non-Jury Session of MECKLENBURG.

Appeal by Mecklenburg County from a judgment of the Superior Court affirming a ruling of the State Board of Assessment with reference to the tax situs of certain rolling stock belonging to Pilot Freight Carriers, Inc. The evidence of the parties before the State Board of Assessment was uncontradicted and shows these pertinent facts:

Pilot Freight Carriers, Inc. (Pilot), a North Carolina corporation with its principal office in Winston-Salem, Forsyth County, is a common carrier of property in interstate commerce. On January 1, 1961, and January 1, 1962, Pilot had a freight terminal in or near the following North Carolina cities: Winston-Salem, Charlotte, Durham, Asheville, Laurinburg and Hickory. It also had twenty-two terminals located outside of North Carolina along the Eastern Seaboard. The terminals at Winston-Salem, Charlotte, and Durham, are break-bulk terminals, in which freight is unloaded from one trailer and reloaded into another for shipment to the ultimate destination. At each terminal Pilot requires a certain number of trucks, tractors, and single-axle trailers for pickup and delivery work, the break-bulk terminals requiring the greatest number. These units are permanently based at the particular terminal. For the year 1962 Pilot listed 49 such units for *ad valorem* taxes in Mecklenburg County. These units (listed at $187,-755.00) and the office equipment and furnishings at the terminal (listed at $15,725.00) are not involved in this proceeding.

During the year 1962 Pilot had, in all, 1,118 pieces of equipment. The vast majority were not used in connection with a single terminal but were line-haul tractors and trailers which might remain in one terminal from fifty minutes to twenty-four hours. From year to year or from day to day this situation does not change. For each tractor Pilot owns approximately two trailers. It exchanges trailers with about

fifty other companies on the Eastern Seaboard. When tractors and trailers are not on the road, they are parked anywhere from Maine to Florida.

Each terminal requires a varying number of line-haul tractors to move the freight which originates there or which it forwards, the break-bulk terminals requiring, again, the largest number. These requirements change from day to day. For internal-control purposes only, from time to time Pilot arbitrarily assigns a definite number of designated tractors to a particular terminal. "The lists are just a guide to go by to move the equipment." The particular unit assigned to a designated terminal, may, in fact, never visit it during the year. Long-haul trailers are never assigned to a particular terminal even for internal-control purposes.

For 1961 and prior years, for the apparent purpose of distributing its tax payments, Pilot arbitrarily listed for *ad valorem* taxes in Mecklenburg County many of its line-haul tractors and trailers without regard to the statutory tax situs of the property. For 1961 it listed a total of 300 units. For the year 1962, however, it listed 49 units, only those items of equipment actually based at, and continually used in connection with, the Charlotte terminal. Insisting that it should be more in line with that of prior years, the Tax Supervisor for Mecklenburg County refused to accept this listing. Thereafter he devised for Mecklenburg County a tax formula factored into Pilot's total mileage, the portion thereof traveled in North Carolina, tonnage of freight handled, and the total number of its motor vehicles. The record does not disclose the formula, and, because Pilot refused to supply the necessary information, it was not put into effect. In June 1962 the Mecklenburg County Board of Equalization and Review (County Board) arbitrarily listed for taxation the 300 units which Pilot had listed in 1961. Using the average value of the number of the vehicles listed there during the previous five years, it assessed all of Pilot's property in Mecklenburg County at the figure of $905,825.00. This figure included the 49 units which Pilot had voluntarily listed at $187,755.00, as well as the office equipment. Pursuant to G.S. 105-329, Pilot appealed the listing and assessment to the State Board of Assessment (State Board), where it contended that the tax situs of the rolling stock in question is Forsyth County, the location of its principal office. The State Board, holding that this equipment was not situated in Mecklenburg County for the purpose of *ad valorem* taxes, reversed the County Board. The County then petitioned the Superior Court of Mecklenburg County, pursuant to G.S. 143-306 *et seq.*, to review and reverse the decision of the State Board for that (1) jurisdiction to determine the tax situs of

property is vested exclusively in the Superior Court but, (2) if the State Board did have such jurisdiction, it erred in not requiring respondent to list the line-haul equipment in question in Mecklenburg County under the provisions of G.S. 105-302. The Superior Court heard the matter and entered a judgment affirming the ruling of the State Board that the situs of the controversial equipment was not Mecklenburg County. The County appeals to this Court.

*Dockery, Ruff, Perry, Bond & Cobb by Hamlin L. Wade; Hasty, Hasty and Kratt by Fred H. Hasty for Mecklenburg County, appellant.*
*Womble, Carlyle, Sandridge & Rice by Leon L. Rice, Jr. and Wade M. Gallant, Jr., for Pilot Freight Carriers, Inc., appellee.*

SHARP, J. This appeal presents two questions: (1) Did the State Board of Assessment have jurisdiction to determine the tax situs of the line-haul tractors and trailers owned by Pilot Freight Carriers, a North Carolina corporation, whose principal place of business is in Forsyth County? (2) If so, did it correctly rule that the tractors and trailers in question were not *situated* in Mecklenburg County within the meaning of G.S. 105-302(d), and, therefore, did not have a tax situs there?

The County Board and the State Board are both creatures of the legislature, and each has only such powers as the legislature confers. *State v. Curtis*, 230 N.C. 169, 52 S.E. 2d 364. G.S. 105-327(g) prescribes the powers of the County Board:

"(1)  It shall be the duty of the board of equalization and review to equalize the valuation of all property in the county, to the end that such property shall be listed on the tax records at the valuation required by law; and said board shall correct the tax records for each township so that they will conform to the provisions of this subchapter.

"(2)  The board shall, on request, hear any and all taxpayers who own or control taxable property assessed for taxation in the county in respect to the valuation of such property or the property of others.

"(3)  The board shall examine and review the tax lists of each township for the current year; shall, of its own motion or on sufficient cause shown by any person, list and assess any real or personal property or polls subject to taxation in the county omitted from said lists; shall correct all errors in the names of persons, in the description of property, and in the

assessment and valuation of any taxable property appearing on said lists; shall increase or reduce the assessed value of any property which in their opinion shall have been returned below or above the valuation required by law; and shall cause to be done whatever else shall be necessary to make said lists comply with the provisions of this subchapter . . ."

This statute obviously gives a county board jurisdiction to list, value, and assess only property situated in its county, but it is equally apparent that it imposes upon it the duty to see that all property in that county is listed for taxation at the valuation required by law. This duty necessarily implies the power to consider and decide whether property is located in the county for tax purposes, i. e., to pass upon its tax situs. A determination of that fact is a requirement precedent to any legal listing, assessment, and valuation for tax purposes. In most instances the taxpayer who appeals the valuation placed upon his property by the County Board raises no question of situs; he is usually concerned only with having the valuation reduced, not eliminated there. Where, however, the question of tax situs is raised before the County Board, it is an integral part of its duties to pass upon the question. In doing so, it is not passing upon the taxpayer's liability for the tax. Pilot concedes the liability; the only question is whether it is liable to Mecklenburg County.

G.S. 105-329 authorizes the property owner or any member of the County Board of Commissioners to appeal from a decision of the County Board to the State Board. The jurisdiction of the latter is fixed by G.S. 105-275, which provides:

"Duties of the Board.—The State Board of Assessment shall exercise general and specific supervision of the systems of valuation and taxation throughout the State, including counties and municipalities, and in addition it shall be and constitute a State Board of Equalization and Review of valuation and taxation in this State. It shall be the duty of said Board: . . .

"(3)  To hear and to adjudicate appeals from boards of county commissioners and county boards of equalization and review *as to property liable for taxation that has not been assessed or of property that has been fraudulently or improperly assessed through error or otherwise, to investigate the same, and if error, inequality, or fraud is found to exist, to take such proceedings and to make such orders as to correct the same.* In case it shall be made to appear to the State Board of Assessment that any tax list or assess-

ment roll in any county in this State is grossly irregular, or any property is unlawfully or unequally assessed as between individuals, between sections of a county, or between counties, the said Board shall correct such irregularities, inequalities and lack of uniformity, and shall equalize and make uniform the valuation thereof upon complaint by the board of county commissioners under rules and regulations prescribed by it, not inconsistent with this subchapter . . .

"(5) To discharge such other duties as may be prescribed by law, and take such action, do such things, and prescribe such rules and regulations as may be needful and proper to enforce the provisions of this subchapter and the Revenue Act. . . ." (Italics ours.)

Valuation is merely one aspect of taxation, as the preamble to G.S. 105-275, quoted above, recognizes. The statute makes the State Board a board of equalization and review *of valuation and taxation in this State*. Subsection (3), italicized above, specifically authorizes the State Board to hear and adjudicate appeals from the County Board "as to property liable for taxation" which either has not been assessed or has been improperly assessed and then to make such orders as are necessary under the law. Subsection (3) is specific statutory recognition that jurisdiction over *ad valorem* taxation includes the power to determine the tax situs of the property which a county has assessed. One of the primary functions of the State Board is to maintain reasonable uniformity throughout the 100 counties in carrying out the provisions of the revenue laws and the Machinery Act with reference to both tax valuations and procedures. If, as the County contends, the only issue which the State Board can determine upon an appeal from a county board is the narrow one of valuation, that function of the State Board is thwarted. Should this Court adopt that view, a taxpayer could be assessed for the same items of rolling stock in all or several of the 100 counties in North Carolina. The argument of the county that a taxpayer, faced with such multiple assessments, has an adequate remedy under G.S. 105-406 is not realistic. In such an instance, to institute an action for injunctive relief or to pay the taxes under protest and sue for a refund conceivably could require so much litigation and such extensive use of funds as to strain the resources of the most solvent common carrier. We are certain the legislature never intended to place any taxpayer of the State in such a position. Indeed, we apprehend that one of the legislative purposes in creating the State Board was to prevent duplicate or multiple listings.

We hold that the State Board had jurisdiction to decide the question of the tax situs of the rolling stock here involved. The jurisdiction which G.S. 105-275(3) confers upon the State Board is not exclusive. The provisions of G.S. 105-406 are still open to a taxpayer if he prefers those provisions. Furthermore, the administrative decisions of the State Board are always subject to review by the Superior Court. Under both G.S. 105-275(3) and G.S. 105-406, if either the taxpayer or the taxing authority wants judicial review, it is available. As Rodman, J. pointed out in *Duke v. Shaw, Commissioner of Revenue,* 247 N.C. 236, 100 S.E. 2d 506, it is immaterial whether the Superior Court determines the taxpayer's question in an action originally instituted in that court or upon an appeal from the State Board. The answer to the first question presented by this appeal is, therefore, Yes. The second question, whether upon the undisputed facts in this case the State Board correctly held that the tax situs of the property was not Mecklenburg County, must likewise be answered, Yes.

The general rule is that personal property must be listed in the township in which its owner has his residence, and the residence of a corporation is at the place of its principal office in the State, G.S. 105-302(a). As an exception to the rule, G.S. 105-302(d) requires all tangible property — except farm products — to "be listed in the township in which such property is *situated,* rather than in the township in which the owner resides, if the owner . . . hires or occupies a store, mill, dockyard, piling ground, place for the sale of property, shop, office, mine, farm, place for storage, manufactory or warehouse therein for use in connection with such property. . . ." (Italics ours.) Property stored in public warehouses, merchandise in the possession of a consignee or a broker, property used by the public generally, and vending machines placed on a location outside the township in which the owner or the lessor had his residence come within the provisions of subsection (d).

Since the "residence" of Pilot is Forsyth County, Pilot may not be required to list these line-haul tractors and trailers in Mecklenburg County unless they are *situated* there within the meaning of G.S. 105-302(d). Webster defines *situated* as "having a site, situation or location; located; *as a town situated on a hill.*" Webster, New International Dictionary (2d ed. 1934). (Italics ours.) Clearly, *situated* connotes a more or less permanent location. *Credit Corp. v. Walters,* 230 N.C. 443, 446, 53 S.E. 2d 520, 522. It does not mean a mere temporary presence. *Montague Brothers v. Shepherd Co.,* 231 N.C. 551, 554, 58 S.E. 2d 118, 121. See *Finance Co. v. O'Daniel,* 237 N.C. 286, 290, 74 S.E. 2d 717, 720.

Pilot's line-haul tractors and trailers are not more or less permanently situated or located in Mecklenburg County or at any other one of its twenty-eight terminals on the Eastern Seaboard. The County's contention that Pilot's equipment lists locate and situate a certain number of its rolling stock in Mecklenburg County is untenable. These lists, which purport to assign designated tractors to specific terminals, are changed from day to day and are merely a bookkeeping device for Pilot's internal control. They bear no relation either to the actual identity of the equipment assigned to a particular terminal or to its geographical location on any designated date. Under existing statutes, these lists are irrelevant on the question of tax situs.

By G.S. 105-364 through G.S. 105-369 the General Assembly has provided a method by which the State Board values and assesses all rolling stock and other tangible and intangible property of railroads operating in this State, as well as a formula for apportioning the valuations between the several counties involved. "As to the *situs* of realty there can be no doubt, but the *situs* of personalty for purposes of taxation from time immemorial has been a matter for the law-making power, which has provided different rules for different kinds of personalty, and has changed them from time to time." *Winston v. Salem*, 131 N.C. 404, 42 S.E. 889. Except for its property which has acquired a business situs elsewhere (G.S. 105-302(d)), the legislature has fixed the tax situs of the personalty of a corporation at the place of its principal office in the State. The County Board first attempted to tax Pilot's rolling stock in a manner somewhat analogous to the method the General Assembly had provided for taxing the rolling stock of railroads. Pilot thwarted this attempt by refusing to supply the necessary information to implement the formula. However, without legislative sanction — which it does not have —, Mecklenburg County has no authority to use such a device. No more is it authorized arbitrarily to list 300 of Pilot's 1,118 pieces of equipment for taxation and to give each unit a value based on the average of Pilot's listings for the previous five years. The County suggests that if Pilot is permitted to list all its line-haul equipment in Forsyth County, that permission will constitute an incentive for large trucking firms to establish their principal offices in counties with low tax rates and little business. If we should concede this highly improbable possibility, the answer is that the problem is the legislature's alone.

The judgment of Copeland, S. J. was, in all respects, correct and it is Affirmed.