IN THE MATTER OF: APPEAL OF McLEAN TRUCKING COMPANY, WINSTON-SALEM, NORTH CAROLINA, FROM AN ACTION OF THE FORSYTH COUNTY BOARD OF EQUALIZATION AND REVIEW RELATING TO THE VALUATION AND SITUS OF CERTAIN OF APPELLANT'S TRACTORS AND TRAILERS FOR PURPOSES OF 1970 AD VALOREM TAXES

No. 66

(Filed 16 June 1972)

1. Taxation § 25— ad valorem taxes — tractors and trailers — value

G.S. 105-294 requires that tractors and trailers, like other property, be appraised for purposes of taxation at their "true value in money," i.e., their sale value.

2. Taxation § 25— ad valorem taxes — appraisal

The appraisal of property for taxation cannot be made to depend upon the number of units of similar properties owned by the taxpayer or upon the varying abilities of the several taxpayers to negotiate for favorable terms in buying or selling such units.

3. Taxation § 25— ad valorem taxes — tractors and trailers — use of book value

The State Board of Assessment erred in accepting a trucking company's book value of its tractors and trailers as the "true value in money" of such properties, since the book value is based upon what the company actually paid for the vehicles and, therefore, reflects the company's peculiar purchasing power due to the size of its fleet and the resulting volume of its purchases.

4. Taxation § 25— ad valorem taxes — use of Truck Blue Book

The use of the National Market Report's Truck Blue Book and its uniform application to all such vehicles listed by all taxpayers in the county cannot be deemed arbitrary *per se*, the burden being upon the complaining taxpayer to show that the application

of such standard to his vehicles results in their being appraised at a figure in excess of their market value.

**5. Evidence § 33; Taxation § 25— appraisal of trailers — hearsay**

There was no competent evidence before the State Board of Assessment supporting a county's appraisal of trailers owned by a trucking company, where the evidence for the county consisted of the testimony of two of the county's tax appraisers who stated that their appraisal was based upon information as to the price of new trailers obtained by them from an official of a trailer manufacturer and from a dealer in trailers, since the testimony of the appraisers was hearsay and does not fall within any exception to the hearsay rule. G.S. 143-318.

**6. Taxation § 24— personal property — tax situs — owner's domicile**

Nothing else appearing, tangible personal property may be taxed at its full value by the state of the owner's domicile even though it is frequently taken or sent out of state during the tax year.

**7. Taxation § 24— ad valorem taxation — allocation between counties**

The state of the owner's domicile may determine how the value of property subject to its taxing jurisdiction shall be allocated among its several counties.

**8. Taxation § 24— domestic corporation — personal property — tax situs**

The tangible personal property of a domestic corporation must be listed for taxation at its true value in money in the county and township wherein the principal office of the corporation is located. G.S. 105-302(a).

**9. Taxation § 24— personal property — apportionment between taxing units**

In the absence of legislative authority, the value of tangible personal property, subject to the taxing power of this State, may not be apportioned between a county and any other taxing unit in or out of North Carolina.

**10. Taxation § 24— tractors and trailers — apportionment of taxes**

For the tax year 1970, there was no statutory authority in this State for the allocation or apportionment of the value of a trucking company's vehicles as between the county wherein its principal office is located and other taxing units in or out of this State.

**11. Taxation § 24— tax situs — taxation by other states**

A tax improperly imposed by another state cannot deprive this State of taxing jurisdiction, nor does the election of another state not to tax that which is within its taxing power confer upon this State authority to tax that which it could not otherwise tax.

**12. Taxation § 24— domestic corporation — property located or used in another state**

A state may not tax a domestic corporation on account of tangible personal property which is permanently located in another state, or on account of property which is habitually located and used in the

In re Trucking Co.

business of the corporation in another state, even though such property may occasionally come into the state of the domicile.

13. **Taxation § 24— trucking company vehicles — allocation of value between N. C. and other states**

The State Board of Assessment erred in allocating the value of all of a trucking company's tractors between North Carolina and other states, since that figure included the value placed upon vehicles totally beyond the taxing jurisdiction of this State; it also erred in using as the allocation factor the ratio of miles traveled in North Carolina to the total miles traveled by all of the company's interstate vehicles, since the latter figure included the miles traveled by vehicles not taxable in North Carolina because they never, or only rarely, come into this State.

14. **Taxation § 24— trucking company — interstate vehicles — tax situs**

A trucking company was taxable for the year 1970 in the county wherein its principal office was located upon the full value of its tractors and trailers operated in interstate commerce in and out of this State, where no specific tractor or trailer had a fixed, regular route or schedule but moved from one terminal to another as the volume of business required, no tax situs for such vehicles having been established in any other state.

Chief Justice BOBBITT dissenting in part.

· Justice SHARP concurs in dissenting opinion.

APPEALS by McLean Trucking Company, the County of FORSYTH and the City of WINSTON-SALEM from *Armstrong, J.,* at the 19 April 1971 "A" Session of FORSYTH, heard prior to determination by the Court of Appeals. This case was docketed and argued as Case No. 86 at the Fall Term 1971.

This is a companion to Case No. 65 of the same name, decided 10 May 1972, 281 N.C. 242, 188 S.E. 2d 452, that case involving the tax year 1969, whereas the present case involves the tax year 1970. Except for differences in the number of vehicles and in the valuations thereof, the facts in the two cases are the same with reference to the types of vehicles, their location and their use by the taxpayer (McLean) and will not be repeated here.

At the appropriate time, McLean listed 635 tractors and 1409 trailers for county taxes for 1970 in Broadbay Township, Forsyth County. In so doing McLean listed these vehicles at 9.62% of what McLean contended was their total tax valuation, this being an apportionment of such valuation on the basis of the ratio of the interstate miles traveled by McLean vehicles

in North Carolina to the total interstate miles traveled by all McLean vehicles in all states in 1969, including miles traveled by vehicles which never come into North Carolina and which, for that reason, are not among the vehicles so listed by McLean.

In due time the Tax Supervisor appraised the vehicles, changed the listing from Broadbay Township to Winston Township, assessed them at the full assessment ratio, 58% of the appraised value, and refused to apportion such assessed valuation on any basis whatever.

In due time McLean sought relief from the County Board of Equalization and Review, contending that: (1) The appraised valuation was excessive; (2) the correct valuation should be apportioned on the basis above mentioned; and (3) the tax situs of these vehicles was Broadbay Township. The County Board of Equalization and Review affirmed the determinations of the Tax Supervisor in all of these respects.

In due time McLean appealed to the State Board of Assessment, which conducted a hearing and received evidence. The State Board of Assessment made the following findings of fact:

### Unnumbered Findings

McLean is a common carrier of property operating over fixed and regular routes in North Carolina and twenty-three other states. For the past several years, the North Carolina portion of McLean's interstate mileage has been approximately 10%. In 1969, the figure was 9.62%.

This appeal relates to 635 tractors having a book value of $5,161,199 and 1460 trailers having a book value of $4,359,513. The county has valued the tractors at $6,295,810 and the trailers at $5,327,931.

### Numbered Findings

(1) Appellant's tractors were appraised by the county on the basis of "average retail value" as reflected in the "Used Truck Blue Book" published by National Market Reports, Inc.

(2) Used tractors will not usually sell for the said average retail value unless they have been reconditioned by the dealer at a cost of approximataely 20% to 25% of the said average retail value.

(3) The schedule used by the county to value appellant's trailers was developed from conversations with representatives of one or more trailer sales firms.

(4) The entire schedule is keyed to a selling price of $8,000 for a 1970 forty-five foot tandem trailer.

(5) Depreciation is computed on the basis of 20% of the selling price for the first year and 10% of the remaining balance for each subsequent year subject to a residual.

(6) The county made no inspection of appellant's vehicles.

(7) In 1970, appellant purchased 225 forty-five foot trailers at an average price of $6,104.81.

(8) Appellant's book value figures are based upon actual cost less depreciation as allowed by the ICC; i.e., $12\frac{1}{2}\%$ per year to a residual of 15% for trailers and $16\frac{2}{3}\%$ to a residual of 10% for tractors.

(9) The only vehicles known to have been stored in appellant's Broadbay Township "place of storage" during 1969 were some which had been sold by appellant but were awaiting pick up by the purchaser.

(10) Of appellant's 2,918 interstate trailers, 1,409 serve the system at large and 1,509 are assigned to the various terminals throughout the McLean system.

(11) Of the 1,509 assigned trailers, 203 are assigned to North Carolina terminals.

(12) None of the said 203 trailers, except the 51 assigned to the Winston-Salem terminal, have been listed for taxation in any county in North Carolina.

(13) The 9.62% mileage figure was computed on the basis of the interstate mileage driven by all of appellant's 1,166 interstate tractors.

(14) The vehicles involved in this appeal have been subjected to ad valorem taxation on an apportionment basis in numerous taxing jurisdictions in other states.

Upon these findings, the State Board of Assessment concluded: (1) The appraisal methods used by the county resulted in a valuation of the vehicles, tractors and trailers, in excess

of their fair market value and, in this instance, the book value is the best indication of the fair market value; (2) the taxable situs of the property is Winston Township; and (3) McLean is entitled to be taxed on these vehicles in a manner recognizing that they have acquired a partial situs outside North Carolina.

Upon these conclusions, the State Board of Assessment held that the fair market value of McLean's entire interstate fleet of 1,166 tractors was $8,884,945, the fair market value of its entire fleet of 1,409 unassigned trailers was $4,207,178, that 9.62% (the ratio of miles traveled in North Carolina by interstate vehicles, to total miles traveled by all interstate vehicles) was the proper proportion of these valuations attributable to Forsyth County, that the fair market value of 51 trailers assigned to the Winston-Salem terminal (100% attributable to Forsyth County) was $152,335, making a total valuation attributable to Forsyth County of $1,411,798.

The State Board of Assessment further held that trailers having a total fair market value of $453,975 were assigned to terminals in other counties of North Carolina and were attributable for tax purposes to those counties. It, therefore, ordered the taxing officials of Forsyth County and of the City of Winston-Salem to recompute 1970 taxes assessed upon McLean on account of such properties in accord with the above figures; i.e., applying the 58% assessment ratio to such apportioned value and then applying to that result the tax rate. It further ordered that McLean list in the appropriate other North Carolina counties for 1970 and other years not barred by statute the above mentioned trailers so assigned to those counties.

The county and the city petitioned the superior court to review the order of the State Board of Assessment and reverse it, reinstating the action taken by the county taxing authorities. McLean also petitioned the superior court to review the order of the State Board of Assessment and to modify it in the following respects: (1) To include a finding that the true market value of the interstate equipment is that to which McLean's expert witnesses testified; (2) to include a finding and determination that the tax situs of the property (apportioned) is Broadbay Township; and (3) with reference to trailers assigned to McLean's other terminals in North Carolina, to delete the reference in the board's order to any tax years other than 1970.

In re Trucking Co.

In the superior court McLean tendered a judgment, which would have affirmed the decision of the State Board of Assessment in all respects except (1) the determination and order concerning the tax situs and listing of trailers assigned to other terminals in North Carolina, and (2) the determination that the situs of the interstate tractors and trailers was in Winston Township. Thus, McLean abandoned in the superior court its exception to the valuation of its vehicles by the State Board of Assessment.

The county and the city tendered a judgment in conformity to their contentions in their petition for review.

The superior court entered judgment: (1) Affirming the decision of the State Board of Assessment that the proper tax situs of the interstate equipment is Winston Township; (2) affirming the State Board of Assessment's determination of the value of the vehicles; (3) reversing that portion of the final decision of the State Board of Assessment which ordered McLean to list in counties in North Carolina, other than Forsyth, trailers assigned to terminals located in such counties; and (4) remanding the matter to the State Board of Assessment for further consideration of that portion of its order relating to the apportionment of the value of interstate tractors and trailers for taxation.

The superior court directed the State Board of Assessment to "take such additional evidence, if any, as it shall determine necessary in order to make appropriate Findings of Fact and Conclusions of Law," and to determine the apportionment issue in accordance with principles of law laid down in *Billings Transfer Corporation v. Davidson,* 276 N.C. 19, 170 S.E. 2d 873, and other applicable law.

McLean appealed from the judgment of the superior court, contending: (1) The decision of the board on the matter of apportionment is supported by sufficient findings and conclusions, and (2) the interstate vehicles have a tax situs in Broadbay Township.

The county and city appealed from the judgment of the superior court, contending: (1) The court erred in affirming the findings and conclusions of the State Board of Assessment concerning the total valuation of McLean's interstate equipment; (2) the court erred in failing to adjudge that McLean

is not entitled to any apportionment of the valuation of its interstate vehicles; and (3) the court erred in overruling exceptions by the county and city to evidence introduced before the board by McLean.

There is no appeal from that portion of the judgment of the superior court reversing so much of the order of the State Board of Assessment as directs McLean to list for taxation in counties of North Carolina, other than Forsyth, trailers assigned by McLean to its terminals in those counties.

*Hamrick, Doughton and Newton, by Claude M. Hamrick and George E. Doughton, Jr., for McLean Trucking Company.*

*P. Eugene Price, Jr., for Forsyth County.*

*Womble, Carlyle, Sandridge & Rice, by William F. Womble and Roddey M. Ligon, Jr., for City of Winston-Salem.*

LAKE, Justice.

In Case No. 65, decided 10 May 1972, *In Re McLean Trucking Co.*, 281 N.C. 242, 188 S.E. 2d 452, we have held that the tax situs of the interstate vehicles here in question is Winston Township. We affirm that decision.

All references herein to Chapter 105 of the General Statutes, both as to section numbers and as to content, relate to statutes in effect in 1970, not to the 1971 revision of the Machinery Act.

G.S. 105-294 provides:

"All property, real and personal, shall as far as practicable be appraised or valued at its true value in money. The intent and purpose of this section is to have all property and subjects of taxation appraised at their true and actual value in money, in such manner as such property and subjects of taxation are usually sold, but not by forced sale thereof; and the words 'market value,' 'true value,' or 'cash value,' whenever used in this chapter, shall be held to mean for (sic) the amount of cash or receivables in the property and subjects can be transmuted into when sold in such manner as such property and subjects are usually sold."

In re Trucking Co.

G.S. 105-327 (g) provides, with reference to the powers and duties of the County Board of Equalization and Review:

"(1) It shall be the duty of the board of equalization and review to equalize the valuation of all property in the county, to the end that such property shall be listed on the tax records at the valuation required by law; and said board shall correct the tax records for each township so that they will conform to the provisions of this subchapter.

*    *    *

"(3) The board * * * shall correct all errors in the names of persons, in the description of property, and in the assessment and valuation of any taxable property appearing on said lists; shall increase or reduce the assessed value of any property which in their opinion shall have been returned below or above the valuation required by law; and shall cause to be done whatever else shall be necessary to make said lists comply with the provisions of this subchapter. * * * "

G.S. 105-275, with reference to the duties and powers of the State Board of Assessment, provides:

*Duties of the Board.*—The State Board of Assessment shall exercise general and specific supervision over the valuation and taxation of property taxation (sic) throughout the State, including counties and municipalities. It is constituted * * * a State Board of Equalization and Review of valuation and taxation of property in this State. It shall be the duty of the Board:

*    *    *

"(3) To hear and adjudicate appeals from the boards of county commissioners and county boards of equalization and review as to property liable for taxation that has not been assessed or of property that has been fraudulently or improperly assessed through error or otherwise, to investigate the same, and if error, inequality, or fraud is found to exist, to take such proceedings and to make such orders as to correct the same."

G.S. 143-318 provides, with reference to administrative proceedings before State agencies, such as the State Board of Assessment:

*In re Trucking Co.*

"(1) Incompetent, irrelevant, immaterial, unduly repetitious, and hearsay evidence shall be excluded. The rules of evidence as applied in the superior and district court divisions of the General Court of Justice shall be followed.

\* \* \*

"(3) Notice may be taken of judicially cognizable facts. \* \* \* The agency's experience, technical competence, and specialized knowledge may be utilized in the evaluation of the evidence."

G.S. 143-315, with reference to judicial review of decisions of administrative agencies, such as the State Board of Assessment, provides:

"The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantive rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

"(1) In violation of constitutional provisions; or

"(2) In excess of the statutory authority or jurisdiction of the agency; or

"(3) Made upon unlawful procedure; or

"(4) Affected by other error of law; or

"(5) Unsupported by competent, material, and substantial evidence in view of the entire record as submitted; or

"(6) Arbitrary or capricious.

"If the court reverses or modifies the decision of the agency, the judge shall set out in writing, which writing shall become a part of the record, the reasons for such reversal or modification."

The first step to be taken in this matter is to determine "the true value in money" of the tractors and trailers listed by McLean—635 tractors, and 1,409 unassigned and 51 assigned trailers—as of 1 January 1970. G.S. 105-294. This is separate and apart from any question of an apportionment of such value.

The county tax appraisers valued the tractors in accordance with the Blue Book published by National Market Reports,

Inc. The Blue Book states one value for each tractor type and series, this being the publisher's opinion as to the average retail value of the tractors in each such series. Taking the list filed by McLean, the county appraiser assigned to each tractor shown thereon the appropriate average value. The county followed this procedure in valuing all tractors listed for taxation in 1970, irrespective of whether the owner listed one tractor or many.

McLean offered the testimony of Mr. Phil Deans, Used Truck Manager of White Trucks, a division of White Motor Corporation. Mr. Deans classified the 635 tractors according to manufacturer, age and model number. He assigned a per unit value to each such group, giving to eight groups, containing a total of 408 tractors, a valuation within a range, the variation within each such range being either $250 or $500. The remaining four groups, containing 227 tractors, he assigned specific values per unit. Thus, he too assigned to the tractors average values.

McLean also introduced evidence of the book value of these tractors, using the same classification used by Mr. Deans. The book values of the respective groups varied substantially from the values assigned by Mr. Deans. For example: Mr. Deans valued 90 GMC 1963 tractors at $2,350 per unit, whereas the book value was $1,578 per unit, but Mr. Deans valued 179 White 1966 tractors at $4,500 to $5,000 per unit, whereas the book value was $6,462 per unit. Mr. Deans valued 125 White 1969 tractors at $11,000 per unit, whereas the book value was $13,499 per unit.

Mr. Deans testified that it has been his experience that the values stated in the Blue Book published by the National Market Reports, Inc., are substantially higher than the actual market values of such vehicles, and that in order to obtain a price approximating the value stated in the Blue Book, it is necessary to spend 20% to 25% thereof in reconditioning the truck. McLean describes the condition of all its vehicles as "good."

The county, using the Blue Book value per unit, valued the 635 tractors at $6,295,810. McLean's book value is $5,161,199.

There is no Blue Book for trailers. The county appraiser testified that he conferred with the sales manager at the local

office of the Fruehauf Company and with a dealer in new and used trailers. From the information so obtained, he arrived at the opinion that a new 45-foot trailer had a value of $8,000 and a new 40-foot trailer had a value of $7,000. To these figures he applied depreciation at the rate of 20% for the first year and at the rate of 10% of the preceding year's value in each subsequent year. The depreciation rate so applied was based upon information given the appraiser by the above mentioned dealer. Upon this basis the county appaiser valued the 1,460 trailers, including 51 assigned to the Winston-Salem terminal, at $5,327,931. He used this method and these basic figures in appraising all trailers listed for taxation in Forsyth County in 1970, whether by McLean or by other taxpayers.

McLean offered evidence that in 1970 it purchased 225 new 45-foot tandem trailer units for an average cost of $6,104.81 per unit. These 1970 purchases were, of course, not included in the tax list in question. Upon cross-examination, it was developed that these purchases were in large blocks of not less than 60 units and McLean was given substantial price discounts due to volume. McLean further introduced in evidence its book value of its entire fleet of 2,918 trailers, the total being $8,714,122. The book value, of course, represents the price paid by McLean, less its computation of depreciation, and thus reflects similar volume discounts given McLean by its suppliers. McLean did not offer evidence of the book value of the 1,460 trailers involved in this proceeding. The State Board of Assessment simply assigned to these the proportionate part of the book value of the entire fleet.

McLean also offered the affidavit of Mr. Harrison, the local Factory Branch Manager of the Fruehauf Corporation, which was received without objection. Mr. Harrison stated that he is familiar with the various types of trailers included in the McLean fleet and, from time to time, has made appraisals for McLean. Classifying McLean's entire fleet of 2,918 trailers, only 1,460 of which are involved in this appeal, into 30 groups according to manufacturer, age, type and length, he gave his opinion as to the average unit value in each group. McLean also introduced the affidavit of Robert L. Millikin, Branch Manager for Trailmobile, Inc., to the same general effect, though varying slightly as to the respective unit values of the several groups of trailers. There is nothing to indicate that either of these witnesses ever saw or appraised any one

of the 1,460 trailers involved in this appeal and there is no evidence showing that the 1,409 unassigned trailers which move in and out of North Carolina and which are involved in this appeal, fall proportionately into each of the 30 groups or classifications into which these two witnesses divided McLean's entire fleet.

The County Board of Equalization and Review affirmed the tax appraiser's valuation of the 1,409 unassigned trailers at $5,141,569. The State Board of Assessment reduced this to $4,207,178, using McLean's book value as its measure.

[1-3]　G.S. 105-294, quoted above, requires that tractors and trailers, like other property, be appraised for purposes of taxation at their "true value in money;" i.e., their sale value. A tractor or trailer which is part of a large fleet does not, for that reason, have a different sale value from that which it would have if it were the only tractor or trailer owned by the taxpayer. The appraisal of property for taxation cannot be made to depend upon the number of units of similar properties owned by the taxpayer or upon the varying abilities of the several taxpayers to negotiate for favorable terms in buying or selling such units. To hold otherwise would depart from the principle of equality of appraisal which is fundamental in the Machinery Act. In accepting McLean's book value of its tractors and trailers as the "true value in money" of these properties, the State Board of Assessment erred, since the book value is based upon what McLean actually paid for the vehicles and, therefore, reflects McLean's peculiar purchasing power due to the size of its fleet and the resulting volume of its purchases. See, Annot., 160 A.L.R. 684, 686.

The use of the Blue Book published by National Market Reports, Inc., in the valuation of trucks (tractors) for taxation has been approved by this Court. *In re Block Company*, 270 N.C. 765, 155 S.E. 2d 263. In that case he replied, at least in part, upon G.S. 105-428, which statute, by its terms, had no application to Forsyth County. It was repealed in 1971. We do not construe the omission of Forsyth from the list of counties to which G.S. 105-428 was made applicable as a prohibition against the use of the Blue Book for such purpose in Forsyth County. As we said in the Block Company case, at page 769:

"The task of examining and appraising each of the thousands of trucks and cars in [Forsyth] County would

be almost impossible. To avoid this, the County is justified in using some recognized dependable and uniform method of valuing them. There is no 'the' Blue Book nor a 'the' Red Book, any more than there is a 'the' Almanac, but the authorities may use this type publication as a guide, and in the absence of merited complaint adopt figures given by the publication as valuations which would be subject to the assessment ratio. But we know that not all 1964 Buicks, for instance, are of the same value. One may have been driven 200,000 miles and be almost worn out while another had been carefully driven for only 6,000 or 8,000 miles. One may be wrecked and damaged almost to the extent of uselessness, in which event the taxpayer would be entitled to some consideration. And the owner *making such a showing* should not be taxed upon the arbitrary valuation placed in a publication giving no consideration to the condition of the article." (Emphasis added.)

[4] Obviously, the Blue Book figure is an estimate as to the value of the average vehicle in the designated class. Its reliability increases, however, when used as a guide to the value of the units in a large fleet of vehicles, such as that here in question. The use of such a publication and its uniform application to all such vehicles listed by all taxpayers in the county cannot be deemed arbitrary per se. As suggested in the appeal of the Block Company, *supra,* the burden is upon the complaining taxpayer to show that the application of such standard to his vehicles results in their being appraised at a figure in excess of their market value. G.S. 143-318 does not apply to county authorities. The Blue Book was introduced without objection at the State Board hearing. Furthermore, it is within an exception to the Hearsay Rule. See, Stansbury, N. C. Evidence, 2d Ed., § 165.

The State Board of Assessment found that used tractors will not sell for the Blue Book value unless they have been reconditioned at a cost of approximately 20% to 25% of that value. This is in accord with the testimony of Mr. Deans. However, 75% of the Blue Book value of these 635 tractors is $4,721,857, whereas Mr. Deans' estimate of the value of these vehicles, using the upper limits of his several value ranges, was only $3,314,250. The book value of these vehicles was $5,161,199, and the board concluded that the book value is the best indication of fair market value in this case. The State Board of

Assessment never actually found the fair market value of the 635 tractors. However, we interpret its statement concerning book value as a finding that such fair market value of the 635 tractors was $5,161,199. We hold that such finding is "unsupported by competent, material, and substantial evidence in view of the entire record as submitted."

For the reasons above mentioned, the book value of the trailers is not the measure of their fair market value. Also, McLean's evidence that in 1970 (after the listing in question) it purchasesd 225 new 45-foot trailer units for an average price of $6,104.81 is not indicative of the sale price of a new 45-foot tandem trailer. The record shows these purchases were made in large blocks from the same dealer, so that the price reflects a substantial volume discount. Thus, the evidence does not show the county's appraisal based upon its information as to the selling price, new, of such trailers resulted in an excessive valuation. The testimony of Witness Harrison that Fruehauf advertises a 40-foot trailer for $4,495 does not tend to refute the county's valuation for the reason that this witness stated the trailer so advertised is not of the same quality as those used by McLean.

[5] On the other hand, there was no competent evidence before the State Board of Assessment supporting the county's appraisal of these trailers. The evidence for the county and city consisted of the testimony of two of the county's tax appraisers. Both testified that their appraisal was based upon information as to the price of trailers, new, obtained by them from an official of the Fruehauf Corporation and from a dealer in trailers. Neither the official of Fruehauf Corporation nor the dealer was called as a witness. Neither witness for the county and city purported to have basis for an opinion of his own as to the market value of the trailers, new or used. Neither made an inspection of any of the vehicles in question.

This is not to say that there was an impropriety in their making their original appraisals on the basis of information so obtained. Such appraisals are not required to be based upon evidence competent in a judicial proceeding. However, in a proceeding before the State Board of Assessment upon an appeal from the action of the county taxing authorities, G.S. 143-318 governs the admissibility of evidence. It provides that the rules

of evidence as applied in the superior and district court divisions of the General Court of Justice shall be followed. While the testimony of these witnesses was competent to show the method they used in reaching their appraisal of trailers (those of McLean's and those of other taxpayers alike), it was not competent on the question of the correctness of those appraisals. It was hearsay and does not fall within any exception to the hearsay rule.

There was no competent evidence before the State Board of Assessment as to the "true value in money" of the McLean trailers, except the testimony of Messrs. Harrison and Millikin, witnesses for McLean, each of whom valued McLean's entire fleet of 2,918 trailers far below the book value thereof, which the board found to be the entire fleet's true value in money.

We hold, therefore, that the superior court erred in its Conclusion No. 1 that the findings of fact and conclusions of law made by the State Board of Assessment respecting the fair market or true value of the equipment in question are supported by competent and material evidence.

The State Board of Assessment actually made no finding as to the "true value in money" of the 635 tractors which travel in and out of North Carolina. It valued McLean's entire fleet of 1,166 tractors at the book value thereof, $8,884,945, and valued the 1,409 trailers, unassigned by McLean to any terminal, at their book value, $4,207,178. It then attributed 9.62% of each of these amounts to Forsyth County as the tax value of the portion of McLean's interstate vehicles attributable to Forsyth County.

[6-10] Nothing else appearing, tangible personal property may be taxed at its full value by the state of the owner's domicile even though it is frequently taken or sent out of such state during the tax year. *New York Central Railroad Co. v. Miller*, 202 U.S. 584, 26 S.Ct. 714, 50 L.Ed. 1155. The state of the domicile may determine how the taxable value of property, subject to its taxing jurisdiction, shall be allocated among its several counties. With exceptions not here material, this State has determined that the tangible personal property of a domestic corporation shall be listed for taxation at its true value in money in the county and township wherein the principal office of the corporation is located. G.S. 105-302(a) ; *In re McLean*

*Trucking Co., supra.* In the absence of legislative authority, the value of tangible personal property, subject to the taxing power of this State, may not be apportioned between such county and any other taxing unit in or out of North Carolina. *In re Freight Carriers,* 263 N.C. 345, 139 S.E. 2d 633. The Machinery Act of 1971 makes certain provisions for the allocation or apportionment of the valuation of properties of truck companies for tax purposes, but those provisions did not become effective until 1 January 1972 and, consequently, have no bearing upon this appeal. G.S. 105-395. For the tax year 1970, there was no statutory authority in this State for the allocation or apportionment of the value of McLean's vehicles as between Forsyth County and other taxing units in or out of this State.

[11] The failure of the Legislature to provide for constitutionally required apportionment of the tax valuation of property between this and other states cannot, of course, enlarge the taxing jurisdiction of this State or of its counties. Obviously, Forsyth County may not tax McLean upon property which is beyond the taxing jurisdiction of North Carolina. On the other hand, this State's jurisdiction to tax a domestic corporation upon property which is outside its borders during part or all of the tax year does not depend upon what other states do, in fact, with reference to imposing taxes upon the corporation on account of such property. A tax improperly imposed by another state cannot deprive this State of taxing jurisdiction, nor does the election of another state not to tax that which is within its taxing power confer upon North Carolina authority to tax that which it could not otherwise tax. *Central Railroad Company of Pennsylvania v. Pennsylvania,* 370 U.S. 607, 613, 82 S.Ct. 1297, 8 L.Ed. 2d 720, reh. den., 371 U.S. 856, 83 S.Ct. 15, 9 L.Ed. 2d 93; *Northwest Airlines v. Minnesota,* 322 U.S. 292, 64 S.Ct. 950, 88 L.Ed. 1283.

[12] It is now well settled that a state may not tax a domestic corporation on account of tangible personal property which is permanently located in another state. *Union Refrigerator Transit Co. v. Kentucky,* 199 U.S. 194, 26 S.Ct. 36, 50 L.Ed. 150. Likewise, the domiciliary state may not tax its domestic corporation on account of property which is habitually located and used in the business of the corporation in another state, even though such property may occasionally come into the state of the domicile. *Central Railroad Company of Pennsylvania v. Pennsylvania, supra.* On the basis of these principles, McLean

has not listed in Forsyth County its Group I tractors or its Class A trailers (for a description of these vehicles, see *In re McLean, supra*). The county and city do not here contend that those vehicles should have been listed for taxation by them. Thus, they are not involved in this appeal and we are not presently required to determine the correctness of such conclusion as to those vehicles.

[13] The question of apportionment, assuming it to be applicable to any of the McLean vehicles, relates only to the vehicles which run in and out of North Carolina in the course of McLean's business; that is, its Class II tractors and its Class B trailers. Only the value of these vehicles would be subject to apportionment and, assuming that the ratio of miles traveled in North Carolina to total miles traveled is the appropriate allocation factor, the mileage to be used in computing that factor would be the mileage accumulated by these vehicles only. Thus, the State Board of Assessment erred in allocating the value of all of McLean's tractors between North Carolina and other states, since that figure included the value placed upon vehicles totally beyond the taxing jurisdiction of North Carolina. It also erred in using as the allocation factor the ratio of miles traveled in North Carolina to the total miles traveled by all of McLean's interstate vehicles, since the latter figure included the miles traveled by vehicles not taxable in North Carolina because they never, or only rarely, come into this State.

We conclude, however, that upon this record the question of apportionment of Class II tractors and Class B trailers (the vehicles which operate in interstate commerce' in and out of North Carolina) does not arise at all. *Billings Transfer Co. v. Davidson, supra.* In the Billings Case, we said, at page 34, "The burden is on the taxpayer who contends that some portion of his tangible personal property is not within the taxing jurisdiction of his domiciliary state to prove that the same property has acquired a tax situs in another jurisdiction." We also said in the Billings Case, at page 34, "With respect to tangible movable property, a mere *general* showing of its continuous use in other states is insufficient to exclude the taxing power of the state of domicile," and, at page 33, "When a fleet of vehicles is operated into, through, and out of a nondomiciliary state, a 'tax situs' sufficient to satisfy constitutional requirements is acquired if (a) the vehicles are operated along fixed routes *and*

In re Trucking Co.

on regular schedules, or (b) the vehicles are habitually situated and employed within the nondomiciliary jurisdiction throughout the tax year." The record before us does not show that Class II tractors and Class B trailers are habitually situated and employed in any other state throughout the tax year. Nor does the record show that these vehicles are operated on regular schedules. McLean's Witness Wells testified:

> "The period of frequency and the time within which trailers might leave a designated terminal to another could vary depending on the volume of traffic. So when you speak of timetables, there are no timetables on an hour or minute basis. There are timetables on a daily basis.

> "I would say that with respect to schedules and the number of trailers at a particular terminal, it would depend on the demand and need that are dictated by the volume of business."

McLean's Witness Elkins testified:

> "A typical example of our operation—a truck, at least one or more trucks, would be dispatched to Boston, Massachusetts, [apparently from Winston-Salem] every day and when they arrive in Boston, Massachusetts, they do not remain there as permanent fixtures. They come back out to various other places. I am referring to interstate equipment. It is conceivable that after this equipment arrives in Boston, it might not return to Boston for some months."

[14] Thus, any specific tractor or trailer has no fixed, regular route or schedule. It moves from one terminal to another as the current volume of business requires. The total number of vehicles moving to or from any specific terminal varies from day to day as the volume of business fluctuates. This does not establish a tax situs for these vehicles in any other state in accordance with the rule of *Billings Transfer Company v. Davidson, supra*. Therefore, for the year 1970, McLean was taxable in Forsyth County upon the full value of the 635 Class II tractors and the 1,409 Class B trailers. The State Board of Assessment erred in allocating to Forsyth County only a portion of the value of these vehicles and the superior court erred in remanding the matter to the State Board of Assessment for further consideration with regard to the question of apportionment. The matter must, however, be remanded

to the State Board of Assessment for further consideration and determination of the value as of 1 January 1970 of the properties of McLean here in question after due notice to all parties to this proceeding and an opportunity to them to present such evidence upon the question of valuation as may be competent under G.S. 143-318.

The judgment of the superior court must, therefore, be modified and to that end this matter is remanded to that court for the entry of a judgment by it which shall:

1. Affirm the final decision of the State Board of Assessment insofar as it finds, concludes and orders that the proper tax situs of the vehicles in question for the year 1970 is Winston Township;

2. Vacate and set aside the decision of the State Board of Assessment insofar as it purports to determine and fix the value, for the purposes of taxation by Forsyth County for the year 1970, of the properties of McLean here in question;

3. Vacate and set aside the decision of the State Board of Assessment insofar as it orders McLean to list in counties of North Carolina, other than Forsyth County, the properties of McLean specified in the said decision of the State Board of Assessment; and

4. Remand this matter to the State Board of Assessment for the determination by it of the true value in money, as of 1 January 1970, of the 635 tractors, the 1,409 unassigned trailers and the 51 assigned trailers to which this proceeding relates, and the allocation by it to Forsyth County of the entire value of such properties, for the purpose of taxation for the year 1970, such determination to be made by the State Board of Assessment following a further hearing by it, of which hearing all parties to this proceeding shall be given due notice and at which hearing they may offer evidence competent under G.S. 143-318.

Error and remanded.

Chief Justice BOBBITT dissenting in part.

I dissent from that portion of the Court's decision which holds that the valuations placed on McLean's tractors and trailers by the State Board of Assessment were not supported by competent evidence.

In re Trucking Co.

The opinion states: "There was no competent evidence before the State Board of Assessment as to the 'true value in money' of the McLean trailers, except for testimony of Messrs. Harrison and Millikin, witnesses for McLean, each of whom valued McLean's entire fleet of 2,918 trailers far below the book value thereof, which the board found to be the entire fleet's true value in money."

Elsewhere, the opinion states: "[W]e interpret [the statement of the Board of Assessment] concerning book value as a finding that such fair market value of the 635 tractors was $5,161,199. We hold that such finding is 'unsupported by competent, material, and substantial evidence in view of the entire record as submitted.'" In the last sentence, the opinion was quoting G.S. 143-315(5), the general provision describing the various circumstances under which an administrative decision may be reversed.

These conclusions, standing alone, might indicate that the evidence of book value in this case was "incompetent" due to a failure in the manner of *presentation*. However, when considered in context, the term "incompetent" is used to mean *legally impermissible*. The reasoning of the opinion is this: McLean's "book value" reflected substantial quantity discounts that McLean was able to get from time to time in the purchase of its tractors and trailers. Such discounts do not bear on what each individual tractor or trailer might sell for on the market. "[T]he principle of equality of appraisal which is fundamental in the Machinery Act" would require that each tractor and trailer be valued from the standpoint of what each *item*— each tractor and trailer—might sell for on the market. Therefore, the opinion concludes, book value is an improper test and the State Board may not even consider it.

Seemingly, this position puts this Court in the position of making appraisals and usurps the discretion of the duly constituted appraisal boards. Nowhere does it appear that the State Board held that McLean's book value afforded the only proper evidence to be considered in determining the trucks' true value in money. After considering several types of evidence, the State Board came to the conclusion that the book value more nearly approximated true value under the circumstances of this case.

Of course, book value is not necessarily an accurate indicator of true market value. If McLean's discounts represented "bargains" which McLean would not have to pass on to another buyer, then book value, to the extent it recognized such "bargains," would not have been properly relied upon. However, there is no evidence to indicate that a competitor of McLean who makes volume purchases from the manufacturers of tractors and trailers would be unable to obtain similar volume discounts.

McLean is not in the business of selling used tractors and trailers. As of January 1, 1970, McLean had a large inventory of tractors and trailers *for use* in its business. It was the function of the State Board to determine the market value of this inventory in its entirety on that date. Obviously, the willing buyers of large numbers of tractors and trailers would be limited; and any prospective buyer could reasonably expect a volume discount in its purchase of used tractors and trailers at least equal to the volume discount it could obtain in the purchase of new tractors and trailers. It is for the State Board of Assessment to exercise its judgment as to valuations based on the realities of each case.

In *In re Block Co.*, 270 N.C. 765, 155 S.E. 2d 263 (1967), the Court approved the use of the Truck Blue Book in the assessment of the value of trucks (there, only six trucks). In *Block,* the Court found support for its approval for the use of the Truck Blue Book in Article 35A of Chapter 105 (Vol. 2D, Replacement 1965), entitled "Listing of Automobiles in Certain Counties," and specifically in G.S. 105-428. Article 35A, according to G.S. 105-429 thereof, did apply to Guilford County (involved in *Block)* but not to Forsyth County (involved here). Article 35A has been repealed.

Since G.S. 105-429 authorized the use of the Truck Blue Book in Guilford County, the Court did not consider whether the Truck Blue Book would otherwise have been competent under "[t]he rules of evidence as applied in the superior and district court divisions of the General Court of Justice . . . . " G.S. 143-318(1). I share the view that the State Board of Assessment *should* be permitted to consider the Truck Blue Book along with other sources of information which competent appraisers would deem appropriate. Whether there was evidence sufficient to establish that the particular Blue Book

here considered complies with "[t]he rules of evidence as applied in the superior and district court divisions of the General Court of Justice" is not presented on this appeal.

The valuation of McLean's tractors and trailers for the purpose of taxation was a matter for determination by the State Board of Assessment. We are not to determine whether it should have reached a different conclusion. In my opinion, it did not overstep its authority or the limits of its discretion in the valuations it placed upon McLean's tractors and trailers as of January 1, 1970.

Justice SHARP joins in this opinion.