L. J. SPIERS v. P. W. DAVENPORT, CHARLOTTE-MECKLENBURG COUNTY TAX COLLECTOR; CITY OF CHARLOTTE, A MUNICIPAL CORPORATION, AND MECKLENBURG COUNTY, A MUNICIPAL CORPORATION.

(Filed 25 November, 1964.)

1. **Statutes § 5—**

    Where a statute requires an administrative board to act "not later than" a specified time, the time limit is mandatory.

2. **Taxation § 25—**

    G.S. 105-327(e) stipulating that a county board of equalization and review complete its duties "no later than" the date specified is mandatory in

requiring that the board complete its work within the time prescribed, at least to the extent authority is given the board to act *ex mero motu,* and therefore the board may not in December increase the assessed valuation of realty after the taxpayer has already paid the taxes for that year based on the valuation theretofore placed on the property in the regular octennial revaluation.

**3. Same; Statutes § 2—**

Chapter 916, Session Laws 1961, applicable only to Mecklenburg County, does not have the effect of extending the time for the assessment of taxes in Mecklenburg County, but merely gives the board of equalization and review of that county opportunity to act on appeal by property owners from the assessing authorities, and the statute does not vest the board with authority *ex mero motu* to increase valuations after the time limited by G.S. 105-327(e), and to construe it as having such affect would render it unconstitutional as a special act.

**4. Statutes § 4—**

Where a statute is susceptible to two constructions, one of which is constitutional and the other not, the constitutional construction will be given it.

APPEAL by plaintiff from *Riddle, S.J.,* May 18, 1964, Civil D Session of MECKLENBURG.

Plaintiff instituted this action to determine the validity of an additional tax imposed on his lands after the lands had been assessed, the tax liability determined and paid.

The parties waived a jury trial. Summarily stated, the court found these facts: Plaintiff, on January 1, 1963, owned three lots in Charlotte. The assessed value of these lots in 1962 was: Parcel No. 1, $15,990.00; Parcel No. 2, $2,085.00; Parcel No. 3, $5,080.00. An octennial revaluation of lands in Mecklenburg County was made in 1963. Plaintiff listed his three lots. They were then appraised and valued at these figures: Parcel No. 1, $26,930.00; Parcel No. 2, $6,600.00; Parcel No. 3, $32,500.00.

Prior to Thursday after the third Monday in August 1963 (G.S. 105-339), the taxing authorities of Charlotte and Mecklenburg County fixed the tax rate for 1963. Taxes were computed on plaintiff's lots at the rate and appraised values for 1963. The books showing the taxes so levied were delivered to the tax collector for collection prior to September 24, 1963. On that date, plaintiff paid the taxes then charged to his properties. Receipts showing payment were then given plaintiff.

On December 13, 1963, the Board of Equalization and Review, "acting upon its own motion and without any appeal having been taken by plaintiff or by any other person from the assessments made and the taxes levied theretofore against said three parcels of land by the said Tax Supervisor as part of the regular octennial revaluation for the

year 1963, made a new determination and so notified plaintiff of the assessed values of said three parcels of land for the year 1963 and increased the same for said year to the assessed values stated as follows: Parcel No. 1 — $32,405.00; Parcel No. 2 — $22,140.00; Parcel No. 3 — $86,435.00."

The tax books were in February 1964 revised by substituting the values of plaintiff's lots as determined in December 1963 for the appraised value. Tax liability was then computed on the substituted values at the rate fixed by the taxing authorities in August 1963. The tax collector demanded payment of the difference between the amount which plaintiff had theretofore paid and the amount asserted to be owing because of the change in values.

"[T]he Board of Equalization and Review finally adjourned its sessions for the tax year 1963 on March 26, 1964, and that it recessed from time to time without final adjournment until March 26, 1964."

Based on the foregoing findings, the court concluded that plaintiff's lands were liable for the additional sum, as contended by the tax collector. Plaintiff excepted and appealed.

*Parker Whedon for appellant.*
*Dockery, Ruff, Perry, Bond & Cobb and Hamlin L. Wade for defendants.*

RODMAN, J. The Machinery Act, G.S. 105-271, *et seq.*, prescribes the time and manner for listing and valuing property for ad valorem tax purposes. It also fixes the time for payment. The portions of the act pertinent to a decision of this case provide:

Property must be listed annually, G.S. 105-280. Personal property is valued annually, G.S. 105-280; real property is valued octennially, G.S. 105-278. The values are as of January 1 of the year in which the valuation is fixed. The Board of County Commissioners is required to appoint a tax supervisor, G.S. 105-283; he is responsible for the proper listing and appraising of property, G.S. 105-286. The supervisor appoints list takers, 105-287, who in the first instance determine values. But the tax supervisor has the power, at any time prior to the meeting of the Board of Equalization and Review, "to change the valuation placed on any property by the list taker." G.S. 105-286 (g). After the property has been listed and valued, the county commissioners sit as "a county board of equalization and review." G.S. 105-327 (a). The tax supervisor acts as clerk to the Board of Equalization and Review, G.S. 105-327 (d). The time fixed for the first meeting of the Board is "the eleventh Monday following the day on which tax listing began."

(That date is the first Monday in January.) The Board is authorized to recess from time to time, but "it shall complete its duties not later than the third Monday following its first meeting." G.S. 105-327(e). It is the duty of the Board of Equalization and Review "to equalize the valuation of all property in the county, to the end that such property shall be listed on the tax records at the valuation required by law; and said board shall correct the tax records for each township so that they will conform to the provisions of this subchapter." G.S. 105-327(g). Property owners dissatisfied with values equalized by the Board may appeal to the State Board of Assessment. G.S. 105-329. After the Board of Equalization and Review has finished its work, the Board of County Commissioners is without authority to change the records, except to give effect to decisions of the State Board of Assessment; or to correct the name of the taxpayer, or the description of the property, or clerical errors or to list omitted property. They may reassess only "when the supervisor reports that, since the completion of the work of the board of equalization, facts have come to his attention which render it advisable to raise or lower the assessment of some particular property of a given taxpayer." G.S. 105-330.

The reason why the Board of Equalization is required to act within a fixed time is apparent. The taxing authority must know the value of the taxable property before it can fix a rate sufficient to meet governmental needs. This rate must be fixed prior to September, G.S. 105-339, G.S. 153-120. Having ascertained both rate and tax, the amount due by each taxpayer must be computed, and the tax books delivered to the tax collector on or prior to the first Monday in October, on which day the taxes are due and payable, G.S. 105-345. The taxpayer may obtain a discount by prepayment. If he pays prior to the time his tax liability is ascertained, his payment is credited on his tax liability. Here, plaintiff paid his tax in September and obtained a discount of one percent, as provided by G.S. 105-345(6).

The duty imposed on the Board of Equalization and Review to complete its work within the time prescribed by G.S. 105-327(e), at least to the extent that authority is given the Board to act *ex mero motu,* is mandatory. As said by Clark, C.J. in construing a similar statute: "There are some circumstances under which a requirement that a certain act shall be done on a date named may be treated as directory, but that is not possible when the statute conferring a power provides that it shall be performed 'not later than' the time specified." *Williams v. Comrs.,* 182 N.C. 135, 108 S.E. 503; *Wolfenden v. Comrs.,* 152 N.C. 83, 67 S.E. 319; *Fromkin v. State,* 63 N.W. 2d 332; *State v. Johnson,* 106 S.E. 2d 353; Annotations, 105 A.L.R. 624.

Since the Board of Review was without authority under the Machinery Act to increase the value of plaintiff's property in December, after he had paid the taxes assessed thereon, we must determine whether the general rule has been changed by statutes applicable only to Mecklenburg County.

Chapter 916, S.L. 1961, is entitled: "AN ACT AUTHORIZING APPOINTMENT OF A BOARD OF EQUALIZATION AND REVIEW FOR MECKLENBURG COUNTY." The act applies only to Mecklenburg County (sec. 8). Commissioners of that county are authorized to act as the Board of Equalization and Review, or to appoint a special Board of Review. The tax supervisor, or a deputy designated by him, acts as clerk to the Board of Review. The authority vested in the special Board, which the commissioners are authorized to appoint, is substantially the same as the authority given to regular Boards of Review by G.S. 105-327. Section 5 of the 1961 act provides: "The board of equalization and review shall meet at such times and at such places as the chairman of such board may direct, provided, however, it shall complete its duties not later than ten days before the date provided by law for fixing the tax rate for the current year."

Chapter 281, S.L. 1963, ratified April 23, 1963, has this preamble:

"WHEREAS, pursuant to the provisions of G.S. 105-278, the County of Mecklenburg is revaluing real property for *ad valorem* tax purposes as of January 1, 1963; and

"WHEREAS, there have been numerous protests or appeals filed by taxpayers with the Mecklenburg County Board of Equalization and Review and it is anticipated that many other appeals may be filed; and

"WHEREAS, it is deemed desirable that the Mecklenburg County Board of Equalization and Review should have sufficient time in which to fully consider all appeals and to make such adjustments as may be deemed fair and equitable:"

The act provides: "The Mecklenburg County Board of Equalization and Review is hereby authorized to continue its sessions for the year 1963 to hear all appeals which may be brought before it upon the assessed valuations of property, and to make any adjustments, whensoever it shall hear the appeal, as of January 1, 1963."

Defendant relies on the 1963 act to support its position that it could in December, after plaintiff had paid his taxes, increase the appraised value of plaintiff's property. We are of the opinion that the Legislature did not intend to grant such authority. The preamble clearly indicates that the act was intended to afford the Board of Equalization and Re-

view opportunity to act on appeals by property owners from the assessing authority. The act merely granted this authority. It does not purport to vest the Board with authority *ex mero motu* to increase the values which the assessor has placed on a taxpayer's property.

The people have limited the power of the Legislature to enact local or special laws. Our Constitution provides in Art. II, sec. 29: "The General Assembly shall not pass any local, private, or special act * * * extending the time for the assessment or collection of taxes * * *." If defendants' interpretation of c. 281, S.L. 1963, is correct, the statute would do violence to this constitutional provision. Everywhere in North Carolina, except in Mecklenburg County, the power of the Board of Equalization and Review to increase the value assigned by the assessors to the taxpayer's property terminated prior to the time the commissioners were required to levy taxes. Defendants' contention would authorize the Legislature to enact a special statute extending the time for the assessment of taxes in Mecklenburg County. The statute ought not to receive a construction which would bring it into direct conflict with constitutional prohibitions.

We conclude the Board of Equalization and Review was without authority in December 1963 to increase the assessed value of plaintiff's property.

Reversed.