IN THE MATTER OF: APPEAL OF McLEAN TRUCKING COMPANY, WINSTON-SALEM, NORTH CAROLINA, FROM AN ACTION OF THE FORSYTH COUNTY BOARD OF COMMISSIONERS PLACING THE TAXABLE SITUS OF CERTAIN OF THE APPELLANT'S OVER-THE-ROAD VEHICLES IN WINSTON TOWNSHIP (CITY OF WINSTON-SALEM), NORTH CAROLINA, AS OF JANUARY 1, 1969

No. 65

(Filed 10 May 1972)

1. Taxation § 24— vehicles owned by interstate motor carrier — tax situs

The tax situs of vehicles used by a trucking company in interstate commerce was the township in which the company has its principal office in the State, G.S. 105-302(a), not the township in which a lot owned by the company and designated by it as a storage place

In re Trucking Co.

for such vehicles was located, G.S. 105-302(d), where no such vehicles were actually stored upon such lot or elsewhere in the township in which the lot was located as of the first day of the tax year or for many months prior thereto for the reason that they were constantly on the move.

2. **Taxation § 25— Board of Equalization and Review — change of tax listing — time limitation**
    A County Board of Equalization and Review had no authority to change a tax listing from one township to another after the time limitation set by G.S. 105-327(e) for completion of its duties had expired, such time limitation being mandatory.

3. **Taxation § 25— Board of Equalization and Review — Board of County Commissioners — change of tax records**
    Although the County Board of Equalization and Review is identical in membership with the Board of County Commissioners, G.S. 105-327(a), its powers do not evolve upon the Board of County Commissioners after its authority has ceased by lapse of time, the authority of the Board of County Commissioners thereafter to make changes in the tax records being limited to that conferred by G.S. 105-330.

4. **Statutes § 5— statutory construction**
    Nothing else appearing, the Legislature is presumed to have used the words of a statute to convey their natural and ordinary meaning.

5. **Taxation § 25— improperly listed property — authority of County Commissioners to correct — discovered property**
    The Board of County Commissioners had no authority to change a tax listing from one township to another as "discovered property" under G.S. 105-330, since "discovered property" means property which has not been listed for taxation; even if that term could be construed to include property improperly listed, the Board of County Commissioners had no authority to change the listing where the county and city were fully aware of the facts governing the tax situs of the property in question prior to the date on which the County Board of Equalization and Review ceased to function, since the authority of the Board of County Commissioners to change the listing extends no further than a change as to property "discovered" after the County Board of Equalization and Review has finished its work and ceased to function.

APPEAL by McLean Trucking Company and by respondents, Forsyth County and the City of Winston-Salem, from *Armstrong, J.*, at the 29 March 1971 Civil Session of FORSYTH, heard prior to determination by the Court of Appeals. This case was docketed and argued as No. 85 at the Fall Term 1971.

McLean Trucking Company (McLean) is incorporated in North Carolina and has its principal office in the City of

Winston-Salem. The city and Winston Township of Forsyth County are coterminous. McLean is a common carrier of property by motor vehicle. On 1 January 1969, it operated sixty-six terminals in twenty states, including one in Winston-Salem. Its vehicles operate on fixed and regular routes, but not upon regular timetables. In the four years preceding 1969, approximately 9.69% of its total interstate vehicle miles were in North Carolina.

McLean assigns to each of its terminals all vehicles used solely for the pick-up and delivery of freight within the local area served by such terminal. All such "local equipment" is recognized as having its tax situs at the terminal to which it is so assigned. Thus, such "local equipment" assigned to the Winston-Salem terminal is listed for taxation in Winston Township. It is taxed both by the county and by the city. This appeal does not involve the taxation of such "local equipment."

Other tractors and trailers owned by McLean, referred to as "interstate equipment," move between the various terminals in its system. They are not assigned to any specific terminal and remain at any terminal for brief periods only. These interstate tractors are divided into two groups. Those in Group I, with rare exceptions, never come into North Carolina. They were not listed for ad valorem taxes in North Carolina in 1969. Group II tractors move between the various McLean terminals and so travel in and out of all states served by McLean, including North Carolina. This appeal does not involve Group I tractors.

There are also two groups of trailers included in McLean's interstate equipment. Group A consists of a pool of trailers, of which each terminal in the total system is entitled to the use of a specific number, though not specific trailers, at any given time. The Group A trailers to which the Winston-Salem terminal is so entitled are regularly listed by McLean for ad valorem taxes in Winston Township and were so listed by McLean in 1969. The remaining Group A trailers (i.e., those so assigned to other terminals) were not listed by McLean for ad valorem taxes in Forsyth County. The remaining interstate trailers, Group B, are not pooled and are not assigned to any specific terminal, but serve the system at large, moving from terminal to terminal and from state to state as needed. This appeal does not involve Group A trailers.

In re Trucking Co.

In accordance with the practice followed by it since 1950, McLean listed in Broadbay Township, for 1969 ad valorem taxes, all of its Group II tractors, with a tax value of $2,050,450, and all of its Group B trailers with a tax value of $2,268,110. The total, $4,318,560, is the full taxable value of all such equipment, without any apportionment between North Carolina and the other states in which the respective vehicles operate. These are the only vehicles to which this appeal relates.

On 29 August 1969, taxes levied by Forsyth County, in accordance with such listing, were paid in full by McLean. For the year 1969, McLean also incurred and paid ad valorem property taxes on the same vehicles in some of the other states in which it operates.

Following the 1969 listing by McLean of these vehicles, and at some time prior to 22 April 1969, a question was raised as to whether such vehicles should have been listed for taxes in Broadbay Township or in Winston Township. If the proper place for listing was Winston Township, the vehicles would also be subject to city taxes, otherwise not. With respect to this question, on 22 April 1969, attorneys for the city and for the county wrote to the attorneys for McLean, requesting information as to the nature of the personal property so listed in Broadbay Township and as to whether a tract of land also listed by McLean in Broadbay Township was occupied by McLean as a "place for storage" and, if so, the extent to which storage actually took place thereon. McLean's attorneys replied promptly, advising:

"The personal property listed there consists entirely of tractor and trailer equipment used by our client in its operations as an interstate motor common carrier of freight. * * * The amount of this type of equipment listed in Broadbay Township represents that portion of the line-haul fleet which is not permanently stationed at the Winston-Salem terminal or assigned outside of Forsyth County or domiciled outside of Forsyth County. It represents road equipment which is not used in connection with a single terminal but which moves to and from various terminals within the McLean system. * * *

"The personal property listed in Broadbay Township is personal property which our client *elects* to list in its home county for taxes rather than at some other location throughout the McLean system.

"The tract of land above referred to was acquired by our client many years ago as a place for storage or parking area for the type of line-haul equipment referred to above when the same is not engaged in line-haul operations. This property is still occupied for that purpose and is at all times available for that purpose. * * * The lot is actually used very little for storage or parking for the reason that this type vehicle is constantly moving between terminals and between states and remains at one location for only brief periods of time. The lot, however, *has been* actually used for the parking of such vehicles and is retained and available for that purpose.

\*        \*        \*

"I am sure that you are aware of the question which arises as to whether or not this property used exclusively in interstate commerce may be taxed at its full value rather than on an apportionment basis according to mileage or other reasonable factors. While our extensive research in this area leads us to believe that equipment used in interstate commerce cannot be taxed in one taxing jurisdiction at 100% of its value, *our client has not elected to press for such a determination.*" (Emphasis added.)

Following an intervening conference, on 8 September 1969, the attorneys for the city and for the county advised the Tax Supervisor, with a copy to McLean's attorney, that, in their opinions, the McLean vehicles here in question should be listed and taxed in Winston Township.

On 10 September 1969 (after the statutory date for the adjournment of the County Board of Equalization and Review and after the payment by McLean of the 1969 taxes levied by the county), the Tax Supervisor, pursuant to such advice, notified McLean of his intent to place the vehicle on the tax books of Winston Township, requesting McLean to agree that the appropriate valuation would be that previously used in the listing of these vehicles by McLean in Broadbay Township. This notice advised McLean that if it did not so agree on the matter of valuation, that question would be placed by the Tax Supervisor on the agenda for the meeting of the Board of County Commissioners on 22 September. McLean did not sign the requested consent to the proposed valuation in Winston Township.

---

---

On 17 Septebmer 1969, McLean, through its attorney, advised the Tax Supervisor of its contentions that (1) the vehicles were properly listed for taxation in Broadbay Township and (2) in any event, he had no authority to change the listing to Winston Township, the time within which he, the County Commissioners, or the County Board of Equalization and Review, might have made such change, if otherwise proper, having expired.

On 22 September 1969, the County Board of Commissioners met and fixed the value of the vehicles in question at $4,318,560, the identical valuation at which they had been so listed by McLean in Broadbay Township and upon which the county taxes previously paid by McLean had been levied. On 26 September 1969, the Tax Supervisor advised McLean that he was placing the vehicles on the tax books of Winston Township for 1969 taxes at the value so fixed.

On 30 September 1969, the Tax Supervisor billed McLean for 1969 city taxes based upon such listing of these vehicles, which tax bill McLean has not paid.

In 1962 and subsequently, including 1969, McLean requested the Tax Supervisor to develop and use a reasonable apportionment formula for the taxing of such interstate equipment owned by it. These requests were uniformly denied and none of them was pursued by McLean until the present controversy arose.

The origin of the listing of the vehicles in Broadbay Township is as follows: In 1950, McLean acquired a six acre tract of land in Broadbay Township with the intent of designating and using it as a "storage yard and parking area for its interstate equipment when such equipment was not in use." It thereupon inquired of the County Attorney as to whether in view of G.S. 105-302 Broadbay Township would be the taxable situs of the type of vehicle here in question. In that inquiry it stated:

> "At this time the company has acquired property in Forsyth County but outside of the city of Winston-Salem which we propose to use as a storage yard and parking space for equipment used in interstate commerce through all or most of the thirteen [as of 1950] states hereinabove pointed out. * * * The land in question will be the 'place

for storage' of the personal property in question which the company uses in its interstate commerce activities. There will, of course, be an 'office' there and/or 'shop'."

To this inquiry the County Attorney replied that, in his opinion, the tax situs of the property would be the township wherein such "storage yard" was located.

The 1950 opinion of the County Attorney was followed by McLean and the Tax Supervisor until the present controversy arose. Both this opinion and the tax practices followed in reliance thereon were known to the attorneys for the county and for the city at the time of their above mentioned correspondence with McLean in April, 1969. In their advice to the Tax Supervisor, dated 8 September 1969, the attorney for the county and for the city stated:

"Your office has likewise followed the 1950 opinion of the County Attorney in assessing the interstate equipment of companies owning such property and listing it for taxation at the 'place of storage' designated by the company.

"We are of the view that both your office and the companies named above have followed what was considered by all parties to be legally proper under the 1950 opinion. Likewise, we do not feel that the County Attorney who rendered the former opinion gave a wrong opinion, based upon the facts and interpretations of the law then before him.

"We do find, however, that since the date of the former opinion, the facts regarding this situation are slightly different, and the interpretations of the law have been clarified somewhat."

In 1950, the lot in Broadbay Township was enclosed by a metal fence and was used from time to time for the storage of interstate equipment not in use. It continued to be maintained by McLean as a designated place for storage of such equipment, but no equipment was stored thereon for at least twelve months preceding 20 November 1969 and "for some time prior" thereto such equipment was rarely stored or parked upon the lot for the reason that such equipment was constantly on the move. The equipment was not stored at any other location. As of 1 January 1969, and for some time prior thereto, McLean did not maintain either an office or a shop upon the lot

---

---

in Broadbay Township, of which circumstances neither the Tax Supervisor nor the County Attorney was advised in writing.

From the action of the Tax Supervisor, McLean appealed to the State Board of Assessment. Before that board it contended: (1) The property in question not being "discovered property," within the meaning of G.S. 105-331, the action of the Tax Supervisor in listing the property in Winston Township after the adjournment of the County Board of Equalization and Review was unlawful and invalid; (2) the proper 1969 tax situs of the property in question was Broadbay Township; and (3) it is a violation of the Commerce Clause of the Constitution of the United States for the County Board of Commissioners to assess the vehicles at 100% of their tax value rather than at a proportionate part thereof based upon the relationship which its use in North Carolina bears to its use in other states.

The foregoing facts were stipulated before the State Board of Assessment. In addition, McLean offered testimony that the vehicles in question were in North Carolina approximately 12% of the time.

On 12 May 1970, the State Board of Assessment rendered its decision affirming the action of the County Board of Commissioners. It concluded that the tax situs of the vehicles in question, as of 1 January 1969, was Winston Township, the listing was properly corrected to show the proper township, the city was a party to the consideration of the matter and had independent authority under G.S. 105-331(e) to make the correction and the use in the corrected listing of the same valuation at which McLean had listed the property in Broadbay Township was proper. McLean petitioned for judicial review by the superior court, excepting to each of these conclusions.

The superior court affirmed the conclusions of the State Board of Assessment, except that it set aside the board's conclusion as to the valuation. The court remanded the matter to the board with instruction to review the record, take such additional evidence as it shall determine to be necessary, determine whether or not the property is taxable on an apportionment basis and, if so, determine the proper apportionment of the total valuation taxable by the city. From that judgment McLean, the county and the city all appeal.

*Hamrick, Doughton, and Newton, by Claude M. Hamrick and George E. Doughton, Jr., for McLean Trucking Company.*

*P. Eugene Price, Jr., for Forsyth County.*

*Womble, Carlyle, Sandridge & Rice, by William F. Womble and Roddey M. Ligon, Jr., for City of Winston-Salem.*

LAKE, Justice.

All citations to sections of the General Statutes in this opinion relate, both as to section numbers and as to content, to the statutes in effect in 1969.

[1] G.S. 105-302 (a) provides that, except as otherwise provided in that section, tangible personal property must be listed for taxes in the township wherein the owner has his residence, which, in the case of a corporation, is the township in which it has its principal office in the State. McLean contends that this does not apply to the property here in question because subsection (d ) of this statute provides that tangible personal property "shall be listed in the township in which such property is situated, rather than in the township in which the owner resides, if the owner * * * hires or occupies a * * * place for storage * * * for use in connection with such property." This contention cannot be sustained for the reason that the tractors and trailers in question were not "situated" on the lot in Broadbay Township owned by McLean and designated by it as a place for storage of such property. *In re Freight Carriers,* 263 N.C. 345, 139 S.E. 2d 633. As of 1 January 1969, and for many months prior thereto, none of these vehicles was stored upon this lot or elsewhere in Broadbay Township, if, indeed, they ever were there. Consequently, Winston Township was the tax situs of these tractors and trailers as of 1 January 1969 and they should have been listed for 1969 taxes therein.

[2] The vehicles having been listed improperly in Broadbay Township, the County Board of Equalization and Review had the authority to correct the listing and cause the vehicles to be listed for 1969 taxes in Winston Township. G.S. 105-327 (g) (1), (3). This it could do on its own motion or on sufficient cause shown by any person. Subsection (e) of G.S. 105-327 provides, however, that the County Board of Equalization and Review "shall hold its first meeting not earlier than the first Monday in April and not later than the first Monday in May following

the day on which the tax listing began, but it shall complete its duties on or before the third Monday following its first meeting," except that it may continue in session for a longer period when necessary or expedient to a proper execution of its responsibilities, "but in no event shall said board sit later than July 1," except for matters not pertinent to this appeal. The time limitation thus imposed upon the County Board of Equalization and Review by this statute is mandatory. *Spiers v. Davenport*, 263 N.C. 56, 138 S.E. 2d 762. Thus, at the time the Tax Supervisor undertook to change the listing of this property, the County Board of Equalization and Review was powerless to take such action.

G.S. 105-328 provides that when changes made by the County Board of Equalization and Review have been reflected upon the tax records, the members of the board, or a majority thereof, "shall sign a statement at the end of the scroll or tax book to the effect that the scroll is the fixed and permanent tax list and assessment roll for the current year, subject to the provisions of this subchapter."

[3]　The County Board of Equalization and Review is identical in membership with the Board of County Commissioners. G.S. 105-327(a). Nevertheless, after its authority has ceased, by lapse of time, the powers of the County Board of Equalization and Review do not evolve upon the Board of County Commissioners. The authority of the Board of County Commissioners thereafter to make changes in the tax records is limited to that conferred by G.S. 105-330, the pertinent portion of which provides:

"After the board of equalization has finished its work and the changes effected by it have been given effect on the tax records, the board of county commissioners may not authorize any changes to be made on said records except as follows:

\*　　\*　　\*

"(5) To add any *discovered* property under the provisions of this subchapter. \* \* \* " (Emphasis added.)

[4, 5]　Thus, there was no authority in the Board of County Commissioners, and *a fortiorari,* none in the Tax Supervisor, to change the listing of McLean's vehicles from Broadbay Township to Winston Township unless these vehicles constituted "dis-

covered property." Nothing else appearing, the Legislature is presumed to have used the words of a statute to convey their natural and ordinary meaning. *Yacht Company v. High, Commissioner of Revenue,* 265 N.C. 653, 144 S.E. 2d 821; *Seminary v. Wake County,* 251 N.C. 775, 112 S.E. 2d 528. The ordinary meaning of "discovered" is newly found, not previously known. G.S. 105-331(a) makes it clear that "discovered property," as used in the Machinery Act, G.S. Chapter 105, Subchapter II, means property which has not been listed for taxation. Even if this term could be construed to include property improperly listed (see, *Smith v. Dunn,* 160 N.C. 174, 76 S.E. 242), we think G.S. 105-330 makes it clear that the authority of the Board of County Commissioners to change the listing extends no further than a change as to property "discovered" after the County Board of Equalization and Review has finished its work and ceased to function. In the present instance, it is clear that the matter came to the attention of both the county and the city at some time prior to 22 April 1969. Nothing in the record indicates that the county and the city were not fully aware of the facts governing the tax situs of the property in question prior to the date on which the County Board of Equalization and Review ceased to function. Thus, the tractors and trailers listed by McLean in Broadbay Township cannot be deemed "discovered property," within the meaning of G.S. 105-330, as of the date of the attempted listing of these properties in Winston Township by the Tax Supervisor and such attempted listing was without legal effect.

The power conferred by G.S. 105-331(e) upon cities and towns is, by the terms of that statutory provision, no more extensive than the power conferred by that section and by G.S. 105-330 upon the Board of County Commissioners.

Having concluded that the attempted listing of the property in Winston Township for 1969 taxes was ineffectual, we do not reach, in this case, the question of whether McLean was entitled in 1969 to have the full tax value of these vehicles apportioned so as to subject only part of it to taxation in Forsyth County.

The judgment of the superior court affirming the decision of the State Board of Assessment is, therefore, reversed, and the matter is remanded to the Superior Court of Forsyth County for the entry by it of a judgment in accordance with this opinion.

Reversed and remanded.