IN THE MATTER OF: APPEAL OF BASSETT FURNITURE INDUSTRIES, INC.

No. 8510PTC418

(Filed 4 February 1986)

**Taxation § 25— ad valorem taxes—jet "situated" in North Carolina**
    A jet aircraft was "situated" or "more or less permanently located" in Rockingham County on 1 January 1984 and was therefore subject to ad valorem taxation by the county where the aircraft was owned by a nonresident corporation having no principal place of business in this State, but the

plane was hangared in this State for approximately one year while provisions were made to extend the runway of the airport nearest the corporation's headquarters; furthermore, the fact that the plane happened to be physically located at the airport nearest the corporation's headquarters on 1 January 1984 did not defeat taxation by Rockingham County.

APPEAL by taxpayer, Bassett Furniture Industries, Inc. from the Department of Revenue North Carolina Property Tax Commission sitting as the State Board of Equalization and Review. Final decision filed 26 November 1984. Heard in the Court of Appeals 18 November 1985.

In 1984 the Rockingham County Tax Supervisor discovered and "listed" for tax purposes a 1981 Saberliner Jet airplane owned by Bassett Furniture Industries, Inc. (Bassett), a foreign corporation maintaining its principal offices and place of business in Bassett, Virginia. On 10 May 1984 the Rockingham County Board of Equalization and Review affirmed the "listing" of the plane as 1984 discovery property. Bassett appealed the "listing" to the North Carolina Property Tax Commission which sat as the State Board of Equalization and Review. From an adverse final decision by the North Carolina Property Tax Commission, Bassett gave notice of appeal to this court.

Bassett is a foreign corporation having no principal place of business in North Carolina. It has obtained a Certificate of Authority to do business in this state. The plane, listed as discovery property by Rockingham County, has a fair market value for the 1984 tax year of $3,300,000. Bassett does not dispute the aircraft's valuation. Bassett does, however, dispute the Tax Commission's finding that the plane acquired a tax situs in Rockingham County as of 1 January 1984 thereby subjecting the jet aircraft to ad valorem taxation by Rockingham County for 1984.

Before purchasing the Saberliner Jet plane on 18 May 1983, Bassett owned three propeller-assisted airplanes and used the Blue Ridge airport in Spencer, Virginia, for those airplanes. The Blue Ridge airport is located approximately ten miles from Bassett's corporate headquarters. In 1970 or 1971 Bassett constructed a permanent hangar at the Blue Ridge airport. The hangar's facilities include rest rooms, storage rooms for materials, tools and supplies and fuel tanks. Since 1971 Bassett has made several donations to Blue Ridge for various improvements, ex-

pending a total of $100,000 in its hangar and donations to the airport.

The runway at Blue Ridge airport was not long enough to routinely accommodate the Saberliner Jet and this posed certain safety problems. It therefore became necessary for Bassett to locate another airport for the jet to use. On 18 June 1983 Bassett entered into a month-to-month lease for hangar space with Causey Aviation Service, a fixed base operator at the Shiloh airport in Rockingham County. Bassett began using the Shiloh airport for the jet in July 1983. The Shiloh airport is located approximately 35 miles from Bassett headquarters.

During the summer of 1983 Bassett negotiated with Blue Ridge airport authorities to lengthen the runway at Blue Ridge. In August 1983 a contract was let to lengthen the existing runway from 3600 feet to 5000 feet. The final anticipated date for completion of the extended runway was 27 September 1984.

The jet was hangared at Shiloh from July 1983 to 21 June 1984 when Bassett cancelled its lease with Causey Aviation by letter dated 25 June 1984. During that time, Bassett's jet did occasionally use the Blue Ridge airport when safety factors permitted. Between July 1983 and 1 January 1984 Bassett used the Blue Ridge airport a total of 33 times. Routine maintenance was performed at both airports. Fuel was available at both airports and while Bassett attempted to retain a permanent mechanic at Shiloh, it was unable to do so. On 1 January 1984 the jet was located at the Blue Ridge airport. However, from 4 January 1984 until 21 June 1984 Bassett used the Shiloh airport exclusively.

On appeal to the Property Tax Commission, Bassett contended that the Commission did not have jurisdiction over the subject matter, the Saberliner Jet aircraft, because the aircraft did not acquire a tax situs in North Carolina. The Tax Commission disagreed with Bassett's contentions and held that the jet was "more or less permanently located" at Shiloh airport in Rockingham County as of 1 January 1984 and that therefore the jet aircraft had acquired a tax situs in Rockingham County, North Carolina.

*Horton and Michaels, by Walter L. Horton, Jr., for appellant-Bassett.*

*Harrington & Stultz, by Thomas S. Harrington, for appellee-Rockingham County.*

EAGLES, Judge.

In its six assignments of error, Bassett argues that the 1981 Saberliner Jet aircraft was not within the jurisdiction of North Carolina on 1 January 1984 and therefore not subject to ad valorem taxation by Rockingham County. Consequently, Bassett argues, the imposition of the tax constitutes a deprivation of its property and denial of equal protection of the law in violation of the due process and equal protection clauses of the Fourteenth Amendment. We disagree.

G.S. 105-274(a) provides that "[a]ll property, real and personal, within the jurisdiction of the State shall be subject to taxation unless it is: [Defined exclusions and exemptions not pertinent to this appeal.]" G.S. 105-274(b) provides that "[n]o provision of this Subchapter shall be construed to exempt from taxation any property *situated* in this State belonging to any foreign corporation unless the context of the provision clearly indicates a legislative intent to grant such an exemption." [Emphasis added.] An annual listing of all property subject to ad valorem taxation is required by G.S. 105-285(a) and with respect to personal property the value, ownership and place of taxation is to be determined annually as of January 1. G.S. 105-285(b). The county tax supervisor is charged with the duty of listing and appraising all property within the county. G.S. 105-296(a).

The place for listing tangible personal property is determined by statute, G.S. 105-304. G.S. 105-304(a), "Listing Instructions," provides: "This section shall apply to all taxable tangible personal property that has a tax situs in this State. . . . The place in this State at which such property is taxable shall be determined according to the rules prescribed in subsections (c) through (h), below." As the statute requires, taxable tangible personal property must have acquired a tax situs in this State, for "[s]itus is an absolute essential for tax exaction." *Billings Transfer Corp. v. County of Davidson,* 276 N.C. 19, 32, 170 S.E. 2d 873, 883 (1969). Further, when personal property belonging to a

nonresident has acquired a taxable situs in this State, this State may tax that nonresident's property without violating the provisions of the Fourteenth Amendment, United States Constitution. *Mecklenburg County v. Sterchi Brothers Stores*, 210 N.C. 79, 185 S.E. 454 (1936).

The situs of personal property for purposes of taxation is determined by the legislature and the legislature may provide different rules for different kinds of property and may change the rules from time to time. *Planters Bank and Trust Co. v. Town of Lumberton*, 179 N.C. 409, 102 S.E. 629 (1920); *In re Freight Carriers, Inc.*, 263 N.C. 345, 139 S.E. 2d 633 (1965). Our legislature has provided the rules for determining the tax situs of personal property owned by foreign corporations with no principal place of business in this State. G.S. 105-304(d)(2) provides that the "[t]angible personal property owned by a domestic or foreign taxpayer (other than an individual person) that has no principal office in this State shall be taxable at the place in this State at which the property is situated." "Situated" is defined in G.S. 105-304(b)(1) to mean "more or less permanently located."

Our decision depends upon whether the stipulated facts and evidence presented establish that this airplane, belonging to a nonresident owner, was "more or less permanently located" in Rockingham County on 1 January 1984. The general use and significance of the phrase "more or less permanently located" was discussed at length by our Supreme Court in *In re Appeal of Finishing Co.*, 285 N.C. 598, 611, 207 S.E. 2d 729, 737 (1974), quoting from 71 Am. Jur. 2d *State and Local Taxation*, Sections 660, 661 (1973):

> Section 660 provides: "Before tangible personal property may be taxed in a state other than the domicil of the owner, it must have acquired a more or less permanent location in that state, and not merely a transient or temporary one. Generally, chattels merely temporarily or transiently within the limits of a state are not subject to its property taxes. Tangible personal property passing through or in the state for temporary purposes only, if it belongs to a nonresident, is not subject to taxation under a statute providing that all real and personal property in the state shall be assessed and taxed. . . . A criterion is whether the property is there for an indef-

inite time or some considerable definite time, and whether it is used or exists there to be used in much the same manner as other property is used in that community. . . ."

Section 661 provides: "Permanency in the sense of permanency of real estate is not essential to the establishment of a taxable situs for tangible personal property. It means a more or less permanent location for the time being. The ownership and uses for which the property is designed, and the circumstances of its being in the state, are so various that the question is often more a question of fact than of law. In the final analysis, the test perhaps is whether or not property is within the state solely for use and profit there. . . ."

The court held that "the words *more or less* permanently exclude the necessity of establishing unqualified permanency such as actual and continuous presence in the State." *Id.* at 613, 207 S.E. 2d at 739.

The courts are all agreed that before tangible personal property may be taxed in a state other than its owner's domicil, it must acquire there a location more or less permanent. It is difficult to define the idea of permanency that this rule connotes. It is clear that "permanency," as used in this connection, does not convey the idea of the characteristics of the permanency of real estate. It merely involves the concept of being associated with the general mass of property in the state, as contrasted with a transient status — viz., likelihood of being in one state today and in another tomorrow.

*Id.* at 611, 207 S.E. 2d at 737 (quoting Annot., 110 A.L.R. 707, 717 (1937) ).

We have considered the decisions cited by Bassett but all are readily distinguishable. Most involve taxpayers domiciled in North Carolina or taxpayers that have offices or a business situs in this State. Some deal with disputes between North Carolina counties competing for ad valorem tax dollars. Others deal with taxpayers' contentions that the subject personal property acquired tax situs in other states and therefore could not be taxed by North Carolina counties.

Bassett cited in their brief *Texas Company v. Elizabeth City*, 210 N.C. 454, 187 S.E. 551 (1936). It involved a Delaware corpora-

tion which owned several motor boats used in the conduct of its business in Elizabeth City. The boats were used to deliver the Texas Company's products to purchasers located on the sounds and rivers of both North Carolina and Virginia. The boats were never removed from Elizabeth City. In upholding the jury verdict in favor of Elizabeth City our Supreme Court held that:

> The *situs* of personal property for purposes of taxation is ordinarily the domicile of the owner. Where, however, the owner maintains said property in a jurisdiction other than that of his domicile, in the conduct of his business within such jurisdiction, the *situs* of said property for purposes of taxation is its actual *situs*, and not that of his domicile. The exception to the general rule is now universally recognized by the courts, both Federal and state.

*Id.* at 456, 187 S.E. at 552.

The facts before us here deal with a nonresident corporation having no principal place of business in this State and owning a jet aircraft hangared in this State for approximately one year. The following evidence considered by the Tax Commission demonstrates the type of "permanency" contemplated by the statute: When Bassett purchased the jet airplane, the Blue Ridge airport was inadequate to handle such aircraft; Bassett could not then acquire adequate hangar facilities in Danville, Virginia; at that time no contract had been let to extend the Blue Ridge runway; Bassett obtained the use of suitable hangar space at Shiloh airport; in June 1983 a month-to-month lease for the Shiloh hangar was entered into; in July 1983 Bassett began using Shiloh airport; in August 1983 a contract was let to extend the runway at Blue Ridge; the earliest possible completion date was April 1984; Virginia law required that a sales tax on the jet be paid when the jet became "based" in Virginia; Bassett did not pay this sales tax until August 1984; Bassett continuously and exclusively used Shiloh airport between July 1983 and 21 June 1984 except for the 33 times Blue Ridge airport was used between July 1983 and January 1984.

We hold that the stipulated facts and evidence presented by Bassett establish that the jet aircraft was "situated" or "more or less permanently located" in Rockingham County on 1 January 1984. Therefore it had a tax situs in Rockingham County on that

date. Because the property acquired a tax situs in this State, imposition of the ad valorem tax does not violate the provisions of the Fourteenth Amendment to the U.S. Constitution. Further, the fact that the airplane happened to be physically located at the Blue Ridge airport on 1 January 1984 does not defeat taxation by Rockingham County. *In re Plushbottom and Peabody, Ltd.*, 51 N.C. App. 285, 276 S.E. 2d 505, *cert. denied*, 303 N.C. 314, 281 S.E. 2d 653 (1981).

For the reasons stated, the final decision of the North Carolina Property Tax Commission sitting as the Board of Equalization and Review is affirmed.

Affirmed.

Chief Judge HEDRICK and Judge MARTIN concur.