IN THE MATTER OF THE APPEAL OF SAS INSTITUTE INC. FROM A DECISION OF THE WAKE COUNTY BOARD OF COMMISSIONERS FOR 2006

No. COA08-1106

(Filed 6 October 2009)

**Taxation— *ad valorem*—corporate airplane—modification in Delaware**

SAS was required to pay *ad valorem* taxes on an airplane consistent with its value on 1 January 2003 where the plane was in Delaware on that date for installation of a custom interior and

**IN RE APPEAL OF SAS INST. INC.**

[200 N.C. App. 238 (2009)]

stayed there through early September of 2003. SAS presented no evidence that the plane was intended to remain in Delaware after the interior was completed and the plane is properly classified as having been located in Delaware only for temporary maintenance or alteration.

Judge CALABRIA dissenting.

Appeal by taxpayer from judgment entered by Chairman Terry L. Wheeler of the Property Tax Commission. Heard in the Court of Appeals 11 February 2009.

*C.B. McLean Jr. for taxpayer SAS Institute Inc.*

*Shelley T. Eason for Wake County.*

ELMORE, Judge.

This case concerns whether Wake County can levy an *ad valorem* tax for the year 2003 on a plane owned by the SAS Institute (SAS). The plane was in Delaware on 1 January 2003 and stayed in Delaware through early September 2003 while a custom-made interior was being designed and installed; the plane was then returned to Wake County, where it was used by SAS through the end of 2003. The Wake County Assessor (Assessor), the Wake County Tax Committee, and the Property Tax Commission (Commission) all held that SAS should have listed the plane on its 2003 tax forms and, therefore, SAS would be required to pay taxes on the plane for 2003. SAS then appealed to this Court. We affirm the Commission's decision.

FACTS

The facts of this case are undisputed. SAS is a North Carolina corporation with its principal offices in Wake County. On 25 November 2002, SAS purchased an unfinished Boeing 737 jet airplane in South Carolina. The plane was immediately flown to Louisiana for painting, and stayed in Louisiana from 25 November 2002 until 20 December 2002. On 21 December 2002, the plane was flown to Delaware for a custom-made interior to be constructed and installed by DeCrane Aircraft Systems Integration Group (DeCrane). The plane stayed in Delaware from 21 December 2002 through 23 August 2003; it was not flown during this period. The plane was given an Airworthiness Certificate by the Federal Aviation Administration on 3 September 2003, at which point it was flown back to Wake County and turned over to SAS.

SAS listed the plane on its tax forms for 2004 and subsequent years, but it did not list the plane for its 2003 tax forms. In 2006, the Wake County Revenue Department discovered that the plane had not been listed on SAS's 2003 tax forms and notified SAS of this discovery on 8 September 2006. SAS appealed to the Assessor, who decided that the plane should have been listed by SAS for tax year 2003. On 8 January 2007, the Wake County Tax Committee affirmed the Assessor's decision. SAS then appealed to the Commission, which issued an order on 10 March 2008 affirming the Wake County Tax Committee's decision that the aircraft was subject to *ad valorem* taxation by Wake County for 2003. SAS then appealed to this Court. For the reasons stated below, we affirm the Commission's decision.

### ARGUMENT

The outcome of this case depends on whether the plane's tax situs for 2003 was North Carolina or Delaware. SAS argues that the plane's 2003 tax situs was Delaware, and, therefore, North Carolina cannot levy a tax on it; Wake County argues that the plane's 2003 tax situs was North Carolina, and, as such, Wake County can indeed levy a tax on it. We overrule SAS's arguments and hold that the Commission properly found the plane's 2003 tax situs to be North Carolina.

When decisions of the Commission are appealed to this Court, "[q]uestions of law receive *de novo* review, while issues such as sufficiency of the evidence to support the Commission's decision are reviewed under the whole-record test." *In re Appeal of the Greens of Pine Glen, Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003). Both parties argue, without citation, that the plane's tax situs is a question of law, although previous North Carolina cases have tended to treat tax situs as a question of fact. *See In re Appeal of Hanes Dye & Finishing Co.*, 285 N.C. 598, 611, 207 S.E.2d 729, 737 (1974) ("The ownership and uses for which the property is designed, and the circumstances of its being in the state, are so various that the question is often more a question of fact than of law.") (quoting 71 Am. Jur. 2d, State and Local Taxation, § 661 (1973)); *In re Bassett Furniture Industries, Inc.*, 79 N.C. App. 258, 263, 339 S.E.2d 16, 19 (1986). However, the precise standard of review in this case is a moot question, as we reach the same conclusion under both a *de novo* and a whole record approach.

General Statutes Chapter 105 sets out the laws governing taxation of property in North Carolina. *Spiers v. Davenport*, 263 N.C. 56,

58, 138 S.E.2d 762, 763 (1964). N.C. Gen. Stat. § 105-274(a) provides that "[a]ll property, real and personal, within the jurisdiction of the State shall be subject to taxation unless it is [excluded or exempted by North Carolina statute or the North Carolina Constitution]." N.C. Gen. Stat. § 105-274(a) (2007). Ambiguities in statutes imposing taxes are construed in favor of the taxpayer, but statutes exempting property from taxation are construed against the taxpayer. *In re Appeal of Martin*, 286 N.C. 66, 77, 209 S.E.2d 766, 774 (1974). "Taxation is the rule; exemption the exception." *Odd Fellows v. Swain*, 217 N.C. 632, 637, 9 S.E. 2d 365, 368 (1940). SAS argues that its plane qualifies for one of the exemptions listed in section 274. As such, SAS had the burden of establishing that its plane was not subject to *ad valorem* taxation by Wake County for 2003.

"The situs of personal property for purposes of taxation is determined by the legislature and the legislature may provide different rules for different kinds of property and may change the rules from time to time." *Bassett*, 79 N.C. App. at 262, 339 S.E.2d at 18. The legislature has currently determined that, "[e]xcept as otherwise provided in this Chapter, the value, ownership, and *place of taxation* of personal property, both tangible and intangible, *shall be determined annually as of January 1*." N.C. Gen. Stat. § 105-285(b) (2007) (emphases added). As for determining the place of taxation, N.C. Gen. Stat. § 105-304(c) provides that, "[e]xcept as otherwise provided in subsections (d) through (h) of this section, tangible personal property is taxable at the residence of the owner." N.C. Gen. Stat. § 304(c) (2007). SAS claims that it qualifies for exception (f) of section 304, titled "Property Situated or Commonly Used at Premises Other Than Owner's Residence," which states:

(3) Tangible personal property situated at or commonly used in connection with a premise owned, hired, occupied, or used by a person who is in possession of the personal property *under a business agreement* with the property's owner is taxable *at the place at which the possessor's premise is situated.* For purposes of this subdivision, the term "business agreement" means a commercial lease, a bailment for hire, a consignment, or a similar business arrangement.

(4) In applying the provisions of subdivisions (1), (2), and (3) of this subsection, the temporary absence of tangible personal property from the place at which it is taxable under one of those subdivisions on the day as of which property is to be listed does not

affect the application of the rules established in those subdivisions. *The presence of tangible personal property at a location specified in subdivision (1), (2), or (3) of this subsection on the day as of which property is to be listed is prima facie evidence that it is situated at or commonly used in connection with that location.*

N.C. Gen. Stat. §§ 105-304(f)(3), (4) (2007) (emphases added). SAS argues that, because the plane was in Delaware on 1 January 2003 under the provisions of a business arrangement with DeCrane, the plane's "place of taxation" should be considered DeCrane's location in Delaware and not SAS's principal place of business in Wake County. Assuming *arguendo* that SAS's business arrangement with DeCrane is "similar" to a "commercial lease, a bailment for hire, [or] a consignment," N.C. Gen. Stat. § 105-304(f)(3) (2007), the mere fact that the plane was not in Wake County on 1 January 2003 is not dispositive in determining that the plane's tax situs was Delaware; rather, it establishes only a *prima facie* case that the plane "is situated at or commonly used in connection with" the Delaware location. N.C. Gen. Stat. § 304(f)(4) (2007). As such, in order to qualify for the exemption, SAS was still required to establish by the greater weight of the evidence that the plane was "situated at" DeCrane's facilities in Delaware for tax year 2003; the term "situated" has been defined by N.C. Gen. Stat. § 304(b)(1) as "[m]ore or less permanently located." N.C. Gen. Stat. § 304(b)(1) (2007). Therefore, the question comes down to whether the plane was more or less permanently located in Delaware for tax year 2003.

SAS argues that the plane was in fact "more or less permanently located" in Delaware for tax year 2003 because the plane was at DeCrane's facilities continuously from late 2002 through early September 2003. As such, SAS argues that it meets the requirements of subsection (f) of section 304, establishing that the plane's tax situs for 2003 would be Delaware.

The general use and significance of the term "more or less permanently located" has been analyzed by our Supreme Court, quoting 71 Am. Jur. 2d, State and Local Taxation §§ 660 and 661, as follows:

§ 660 provides: *"Before tangible personal property may be taxed in a state other than the domicil of the owner, it must have acquired a more or less permanent location in that state, and not merely a transient or temporary one.* Generally, chattels merely temporarily or transiently within the limits of a state

are not subject to its property taxes. Tangible personal property passing through or in the state for temporary purposes only, if it belongs to a nonresident, is not subject to taxation under a statute providing that all real and personal property in the state shall be assessed and taxed. . . . A criterion is whether the property is there for an indefinite time or some considerable definite time, and whether *it is used or exists there to be used in much the same manner as other property is used in that community. . . .*"

§ 661 provides: "Permanency in the sense of permanency of real estate is not essential to the establishment of a taxable situs for tangible personal property. It means a more or less permanent location for the time being. The ownership and uses for which the property is designed, and the circumstances of its being in the state, are so various that the question is often more a question of fact than of law. *In the final analysis, the test perhaps is whether or not property is within the state solely for use and profit there. . . .*"

. . .

*The courts are all agreed that before tangible personal property may be taxed in a state other than its owner's domicil, it must acquire there a location more or less permanent.* It is difficult to define the idea of permanency that this rule connotes. It is clear that "permanency," as used in this connection, does not convey the idea of the characteristics of the permanency of real estate. It merely involves the concept of being associated with the general mass of property in the state, as contrasted with a transient status.

*In re Appeal of Hanes Dye*, 285 N.C. at 611, 207 S.E.2d at 737 (emphases added).

Therefore, the default tax situs for SAS's plane was Wake County, which is SAS's principal place of business. In order to show that the plane had acquired a tax situs other than its principal place of business, SAS had to show that the plane was going to be used in Delaware "in much the same manner as other property is used in" Delaware, or that the plane was in Delaware "solely for use and profit there." However, those definitions cut against SAS because the plane was only in Delaware for the purposes of installing an interior and flight certification. Similarly, North Carolina excludes from taxation

IN RE APPEAL OF SAS INST. INC.

[200 N.C. App. 238 (2009)]

"[t]angible personal property shipped into this State for the purpose of repair, alteration, maintenance, or servicing and reshipment to the owner outside this State." N.C. Gen. Stat. § 105-275(25) (2007). SAS presented no evidence that the plane was intended to remain in Delaware after the interior was completed. As such, the plane is properly classified as having been located in Delaware only for temporary maintenance or alteration—not for permanent use. Therefore, the default tax situs of the plane was SAS's principal place of business, Wake County.

SAS cites *Bassett* as precedent that SAS's plane should be considered more or less permanently located in Delaware for tax year 2003. In *Bassett*, a plane was hangared and used in North Carolina for close to a year while a longer runway was built in Virginia near Bassett's headquarters. *Bassett*, 79 N.C. App. at 264, 339 S.E.2d at 20. This Court held that the plane was more or less permanently located in North Carolina, rather than Virginia; however, the plane was in North Carolina for regular use as an airplane, not for maintenance or alterations or repairs like the plane in the current case. *Id.* As such, the *Bassett* plane was used in this state in much the same manner as other planes are used in this state, and the plane was associated with the general mass of property in North Carolina, thereby meeting two factors that demonstrate that the plane was more or less permanently located in North Carolina, rather than Bassett's Virginia headquarters. *Id.* Accordingly, the holding in *Bassett* actually supports our conclusion that SAS's plane was "more or less permanently located" in North Carolina for tax year 2003 because SAS's plane was in Delaware only for maintenance or alterations, rather than for continued, actual use as an airplane. SAS did not meet its burden of showing that it had qualified for an exemption under section 304(f), and SAS is required to pay *ad valorem* taxes on the plane consistent with its value on 1 January 2003. N.C. Gen. Stat. § 105-285(b) (2007).

Affirmed.

Judge STROUD concurs.

Judge CALABRIA dissents by separate opinion.

CALABRIA, Judge, dissenting.

The majority affirms the decision of the Property Tax Commission ("the Commission") that the aircraft ("the aircraft") owned by

**IN RE APPEAL OF SAS INST. INC.**

[200 N.C. App. 238 (2009)]

SAS Institute Inc. ("SAS") had a tax situs in Wake County, North Carolina on 1 January 2003, and therefore was subject to ad valorem taxation in Wake County in 2003. I disagree because the facts indicate that the tax situs of the aircraft on 1 January 2003 was in Delaware, and not in North Carolina. Therefore, I respectfully dissent.

> We review decisions of the Commission pursuant to N.C.G.S. § 105-345.2. Questions of law receive *de novo* review, while issues such as sufficiency of the evidence to support the Commission's decision are reviewed under the whole-record test. Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the Commission. Under the whole-record test, however, the reviewing court merely determines whether an administrative decision has a rational basis in the evidence.

*In re Appeal of the Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 646-47, 576 S.E.2d 316, 319 (2003) (internal quotations and citations omitted). At the hearing before the Commission, SAS had the burden of establishing, by the greater weight of the evidence, the existence of facts from which the Commission could conclude as a matter of law: (1) the aircraft was "more or less permanently located" in Delaware on 1 January 2003; (2) the tax situs of the aircraft on 1 January 2003 was in Delaware; and (3) the aircraft was therefore not subject to ad valorem taxation in Wake County for tax year 2003. *See Transfer Corp. v. County of Davidson*, 276 N.C. 19, 170 S.E.2d 873 (1969); *In re Appeal of Bassett Furniture Industries*, 79 N.C. App. 258, 262-63, 339 S.E.2d 16, 18-19 (1986).

The majority contends that SAS's aircraft was not "situated" in Delaware on 1 January 2003 and therefore did not acquire a tax situs there. Under the majority's interpretation, the aircraft is not entitled to the tax exemption of N.C. Gen. Stat. § 105-304(f)(3) (2007). I disagree.

> Tangible personal property passing through or in the state for temporary purposes only, if it belongs to a nonresident, is not subject to taxation under a statute providing that all real and personal property in the state shall be assessed and taxed. . . . A criterion is whether the property is there *for an indefinite time or some considerable definite time*, and whether *it is used or exists there to be used in much the same manner as other property is used in that community.* . . .

**IN RE APPEAL OF SAS INST. INC.**

[200 N.C. App. 238 (2009)]

*In re Appeal of Finishing Co.*, 285 N.C. 598, 611, 207 S.E.2d 729, 737 (1974)(quoting 71 Am. Jur. 2d, State and Local Taxation §§ 660 and 661 (1973))(emphases added). As conceded by the majority, SAS would qualify for a tax exemption under N.C. Gen. Stat. § 105-304(f)(3) if evidence provided by the whole record showed that the aircraft was more or less permanently located in Delaware on 1 January 2003. SAS was required to show that the aircraft was used "for an indefinite time or some considerable definite time" and "in much the same manner as other property is used" in Delaware. *Finishing Co.*, 285 N.C. at 598, 207 S.E.2d at 737. The majority determines that SAS did not meet this burden because they incorrectly characterize the work that was conducted on SAS's aircraft in Delaware as "temporary maintenance or alteration."

"Situs is an absolute essential for tax exaction." *Transfer Corp.*, 276 N.C. at 32, 170 S.E.2d at 883 (internal citations omitted). "The state of domicile may tax the full value of a taxpayer's tangible personal property for which no tax situs beyond the domicile has been established so that the property may not be said to have acquired an actual situs elsewhere." *Id* (internal quotations and citations omitted). The majority correctly holds that, pursuant to N.C. Gen. Stat. § 105-304(c) (2007), the default tax situs for SAS's aircraft would be its principal place of business, Wake County, North Carolina.

> The test of whether a tax law violates due process is whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return. [N]o state may tax anything not within her jurisdiction without violating the Fourteenth Amendment.

*Transfer Corp.*, 276 N.C. at 24-25, 170 S.E.2d at 878 (1969) (citations and quotations omitted).

On 1 January 2003, the relevant date for taxation purposes, the aircraft was not simply in transit through Delaware—it was undergoing extensive modifications by DeCrane Aircraft Systems Integration Group ("DeCrane") that were expected to take, at the very least, approximately eleven months to complete. These were not simple repairs, but rather the installation of interior equipment required for the aircraft to be certified as airworthy for use as a passenger aircraft. Such substantial modifications necessarily would take several consecutive months to complete. The time period of approximately eleven months or more contemplated by the parties for the aircraft's

modification is properly categorized as a considerable amount of definite time, rather than a temporary period.

The majority places a great deal of emphasis on the fact that the aircraft was not in Delaware for regular use as an airplane. This ignores the fact that, at the time it was shipped to Delaware, the aircraft had *never* been in regular use as an airplane in North Carolina. As the parties stipulated, "the aircraft could not be used as a passenger aircraft because it had no passenger seats, interior walls, or interior furnishings. The aircraft was in Delaware for the purpose of adding these items to the aircraft so that it could be used as a passenger aircraft." Therefore, the modifications were not merely aesthetic alterations; they were necessary and required modifications so that the aircraft could be used for its intended purpose as a passenger aircraft. This was the only way the aircraft could conceivably have been utilized as of 1 January 2003. Under the circumstances, the work performed by the DeCrane facility in Delaware, specifically, adding passenger seats, interior walls, and interior furnishings, would be considered using the aircraft in much the same manner as any other passenger aircraft in the same condition would be used in Delaware. SAS's aircraft should have been considered "situated" in Delaware on 1 January 2003 and therefore exempt from taxation in North Carolina.

Furthermore, as of 1 January 2003, the aircraft, in its unmodified condition, had only been on the ground in North Carolina for one hour and twenty minutes on 25 November 2002 while owned by SAS. Since the aircraft was not in North Carolina on 1 January 2003, it could not be said that the aircraft benefitted from the protection of the laws of North Carolina. From 21 December 2002 until some time after 23 August 2003, the aircraft was in Delaware, entirely under the protection of the laws of the state of Delaware. The aircraft was protected from threats of theft, vandalism, and fire by the law enforcement and fire departments of Delaware, not of North Carolina. The modifications to the aircraft were undertaken entirely by employees of DeCrane, a Delaware company subject to Delaware taxation. Delaware certainly provided benefits to the aircraft during the time the aircraft was modified. By holding that the situs of the aircraft was in North Carolina on 1 January 2003, this Court allows North Carolina the benefit of taxing the aircraft when North Carolina had not "given anything for which it can ask return." *Transfer Corp.*, 276 N.C. at 24-25, 170 S.E.2d at 878.

IN RE M.M.

[200 N.C. App. 248 (2009)]

Finally, the majority's reliance on N.C. Gen. Stat. § 105-275(25) is misplaced. The majority correctly cites that statute for the proposition that North Carolina exempts from taxation tangible personal property shipped into North Carolina for "the purpose of repair, alteration, maintenance, or servicing and reshipment to the owner outside [North Carolina]." N.C. Gen. Stat. § 105-275(25) (2007). However, this statute has no bearing on this case. SAS's aircraft was not shipped into North Carolina for any of the purposes stated in the statute and it was not reshipped to an owner outside of North Carolina. The fact that North Carolina would exempt such personal property from taxation is immaterial to the determination of the situs of SAS's aircraft and therefore N.C. Gen. Stat. § 105-275(25) does not support the majority's holding.

Because SAS's aircraft was being used as any passenger aircraft in the same condition would be used in Delaware on 1 January 2003 and because the aircraft was at that time enjoying protection and benefits conferred by that state, its tax situs was in Delaware and, therefore, outside of North Carolina's tax jurisdiction. "The state of domicile may not levy an ad valorem tax on tangible personal property of its citizens which is *permanently* located in some other state *throughout the tax year*. This is forbidden by the Due Process Clause of the Fourteenth Amendment." *Transfer Corp.*, 276 N.C. at 30, 170 S.E.2d at 883. For North Carolina or Wake County to levy an ad valorem tax on the aircraft while at the same time conferring no benefit on that aircraft is a violation of SAS's due process rights. I would hold that SAS owed no ad valorem tax on the aircraft for the tax year 2003 and would reverse the decision of the Property Tax Commission.